**ST. JOSEPH LEAD COMPANY, a Corporation, Appellant,**

v.

**Perry PRATHER and Maggie Prather, Appellees.**

**No. 15454.**

United States Court of Appeals Eighth Circuit.

Nov. 13, 1956.

Rehearing Denied Dec. 13, 1956.

---

302

John S. Marsalek, St. Louis, Mo. (G. W. Marsalek and Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, Mo., on the brief), for appellant.

Tyree C. Derrick, St. Louis, Mo. (Frank W. May, Flat River, Mo., on the brief), for appellees.

Before STONE (retired), JOHNSEN, and VOGEL, Circuit Judges.

STONE, Circuit Judge.

This is a suit by the parents of Hubert Dale Prather (between sixteen and seventeen years old) claiming damages for his death caused by an explosion of dynamite blasting caps owned by defendant and stored in a magazine building located on land of defendant in Missouri. From a judgment on the verdict, defendant appeals.

The amended petition was based on the claim that the explosives so stored were a public nuisance; and, "In the alternative", that defendant was negligent.

Defendant denied the nuisance and the negligence charges. Also, it pleaded that the son (Hubert) and two companions had entered upon "a large tract of land" belonging to defendant, on which the magazine building was located; "and went about and in the immediate vicinity of said structure, in the company with said two others; that he and his companions were jointly engaged in discharging firearms and in aiding and abetting each other in the discharge of firearms upon and against defendant's property; that they entered upon said property and discharged firearms thereon without the knowledge, permission or consent of the defendant, and were trespassers thereon." The case was tried by plaintiff and submitted to the jury on the basis of being an action for damages caused by public nuisance.

The issues here have to do with the sufficiency of the evidence and with the charge to the jury (including refusals to charge as requested by defendant).

Nuisance cases have to do with the application of the time-honored legal axiom *sic utere tuo ut alienum non leadas*. Being of this character they involve a well nigh unlimited variety of situations resulting in danger, discomfort or annoyance to others. Some of the elements usually present are location of, and character of, the nuisance. Stated in the view most favorable to the prevailing plaintiffs, the here pertinent factual situation—to which Missouri law is to be applied—is as follows.

Defendant is engaged in mining of lead in Missouri. Among its properties was a concrete house used, at times, for storage of explosive materials used in its operations. On the afternoon of January 3, 1953, the materials therein exploded with terrific force, killing Hubert Dale Prather, minor son of plaintiffs. It is this storage of explosives in the location and under the affecting circumstances which the jury found to be a public nuisance.

This house was located in an irregular field (part of a large area of more than one hundred acres) of about thirty to thirty-five acres. Bordering it on the north was the town of Cantwell. Bordering it on the northwest and extending along the west side for some distance was the city of DesLoge. A public highway, paralleled by a railroad, ran near the western side and into DesLoge. Defendant introduced a scale measured plat, from which distances from the powder house to various houses and places were given by witnesses. However, for our purposes, it is enough to know that this explosion was near enough and violent enough to cause various injuries to several houses in DesLoge and in Cantwell —such as shaking houses, breaking window glass, breaking glass in door, cracking wall plaster and painting, cracking walls and breaking wall paper.

Further conception of the violence of the explosion is made clear by the effect upon the powder house itself. This house was (inside measurement) twelve by twenty feet and ten feet high, constructed of ten inch reinforced concrete walls. It had three ventilators in the sides and one in the roof—all protected by heavy screen mesh over the openings. The only other opening was a three-eighths inch plate steel door with an inside back layer of two $1\frac{3}{16}$ of wood attached to the steel plate. The door lock did not go clear through the door and was of a safety pattern which required two keys to operate. The explosion blew this house to pieces, hurling one sizable chunk of concrete into a frame office one hundred yards away.

The source of this explosion was a large number of dynamite blasting caps stored in this powder house. The caps were packed in cartons which were placed on oaken racks or supports. The house was filled with caps at the time of the explosion.

The maintenance of a house containing such a quantity of explosives as to endanger nearby private property and persons thereon and on an adjacent public road and railroad is a public nuisance as to all persons thereon, with resultant

legal liability for personal injury or for damage to such property. This is the law of Missouri.[1]

■ The law as stated in these decisions is not replaced or limited by Mo. Rev.Stat.1949, section 293.150, V.A.M.S. That section prohibits the storage of high explosives (in excess of certain temporary mining supplies) within less than three hundred feet from "any shaft, habitation, public highway, public railway, or from the boundary line of any mining property * * *." There is no semblance of authority in this Statute to limit what otherwise would be a nuisance either public or private.

■ Appellant's requested charge to the jury that the storage house did not constitute a nuisance was properly denied and the portion of the given charge which defined a "public nuisance" and applied the definition to the evidence was not incorrect.

However, determination that this powder house filled with explosives was, in its location, a public nuisance does not dispose of this case for there are other crucial issues raised by appellant. One is that the explosion was directly caused by Hubert, acting individually or in concert with two other boys. Another is that Hubert was a trespasser at the time of the explosion.

As to these two issues, the situation is as follows. Appellant's theory of the occurrence was that the store house was in its possession upon its property; that the three boys came upon its property as trespassers; and that, while there, one of them fired a .22 calibre rifle at the store house causing the explosion. The position of appellees was that the cause of the explosion was unknown; and that the boys were licensees; but, if trespassers, the liability existed because in nuisance cases the duty is absolute and because there is an exception to the trespass rule of no liability when highly dangerous explosives are kept on one's land.

The court refused to charge as requested by appellant to the effect that if Hubert went upon the chat field where the store house was located for his own purposes unconnected with any business with or benefit to appellant, and if the field was owned and solely possessed by appellant he was a trespasser; and if while there he was killed by explosion of the store house, appellant was not liable therefor; and that this status as trespasser was unaffected by the frequent trespass of other persons on this property.

The essential part of the given charge is as follows: "if you find and believe from all the facts and circumstances in evidence before you that plaintiffs' son was a trespasser on defendant's property near the cap house referred to in the evidence, in the following manner, to-wit: that the plaintiffs' son went upon the defendant's property near and about its cap storage house and was firing a rifle at said place and against said storage house, and that he thereby directly and proximately caused the explosion of said cap house mentioned in evidence, then the plaintiffs are not entitled to recover and your verdict should be in favor of the defendant."

■ The effect of the just outlined situation is that the court charged the jury that there was no trespass unless and except through the causing of the explosion. The evidence as to the cause of the explosion was conflicting and the jury verdict that the cause was unknown is supported by substantial evidence. Had the jury found the explosion to have been caused by Hubert, recovery would have been denied. See E. I. Du Pont De Nemours & Company v. Edgerton, 8 Cir., 231 F.2d 430.

1. Liggett v. Excelsior Powder Mfg. Co., 274 Mo. 115, 202 S.W. 372; State ex rel. Hopkins v. Excelsior Powder Mfg. Co., 259 Mo. 254, 169 S.W. 267, L.R.A. 1915A, 615; Schnitzer v. Excelsior Powder Mfg. Co., Mo.App., 160 S.W. 282; French v. Center Creek Powder Mfg. Co., 173 Mo.App. 220, 158 S.W. 723.

The evidence as to the long continued use of the land by numerous people for passage, hunting and dog training is convincing and the evidence as to possession of the chat field (surrounding the magazine) by appellant is in dispute. But, resolving the issue of possession of the chat field favorably to appellant, yet the issue remains as to the character of use of the land in relation to the rights of others.

The pertinent circumstances are as follows. The situation as to location of the powder house in relation to nearness to DesLoge, Cantwell, the highway and the railway have been stated hereinbefore. The nearest mine shaft in use was several miles from this property and near these active workings was another storage house for the explosives being currently used. The powder house involved here had been open and unused for some years until the latter part of 1951. At that time it was filled up with racks and otherwise and came into use for storage of surplus supplies of dynamite blasting caps. At the time of the explosion it was full of caps. Apparently the only open activity of appellant in connection with the house during this use was when cartons of caps were being taken into it for storage or out of it for use where the mining operations were going on. During this period of use, the door was otherwise kept securely locked.

As to the use of this land by others, there is no dispute that it was long free-ly used as a passageway—a short cut—between DesLoge and Cantwell and from Cantwell to Flat River; and that childred played on or around the powder house both before and after it was put back into use.[2] People going between DesLoge and Cantwell would pass probably within one hundred yards of the powder house. Chat was piled so high near one part of the powder house that one could step therefrom onto the roof.

After the powder house was put back in use, there were no signs warning of danger near it or on the entire property. There was no fence around the house. For some time before the reuse in 1951 there had been "no trespassing" signs up near a gate fourteen hundred feet away from the house.

■■ Next, we come to the application of the law to the factual situation here. In his charge, the trial court well defined a public nuisance as "the unreasonable or unwarranted use of one's property in such a manner, by reason of its location, its surroundings, or the circumstances under which it is used, that it may cause mischief, annoyance, discomfort, hurt, or damage, to others who may come in contact with such unreasonable or unwarranted use of such property while in the reasonable enjoyment of their rights of person or property." We have hereinbefore stated that a nuisance may result from an unlimited variety of fact situations—there is no classical pattern. The broad indefinite measuring rule is that a person must so

2. Witness Allen, who was farm supervisor for a subsidiary of appellant was in charge of this farm for some years prior to 1945 or 1946 when it was leased to witness Counts. Extracts from his testimony follow. "I have seen people going through that territory there, through that farm. They were going from Cantwell over to DesLoge. They went through there from the time I took over the place until now, I guess, so far as I know. I built a stile or steps to get over the fence for people to use going through there. At one place they kept tramping the fence down, riding it down. We put up two posts and bored holes through the post and took inch pipes and put up there for them to climb over by. * * * But I know for a number of years that they did use that and had a kind of foot road across there from Cantwell more to Flat River. People from Cantwell would take a short cut and go across there to Flat River. This foot road or path was two hundred yards I would say northwest or mostly north of the powder house."

Witness Counts occupied the place until about two weeks before the explosion. He testified he had seen hunting on the property and children playing "in and around the powder house".

Other witness testified to the same effect.

control and use his property as to prevent injury to others in the rightful use of themselves and their property. The usual situation involving nuisance or not is that where some force or situation existing on one's property threatens harm to persons not thereon. However, there is no compelling reason why what is a nuisance on one's property to a person walking on a nearby street must, under all conditions and circumstances, cease to be such if the person should come upon the property. There are two legal rules of property involved which must and can be made to fit—one is the nuisance rule and the other is the right to the full use of one's own property. In fact, the law of nuisances is an exception or limitation on the unlimited right to use one's property.

Here we are concerned with the maintenance of this powder house at a particular place and under particular circumstances in relation to a seventeen year old boy who was killed by its unexplained explosion. The able trial judge has so well and concisely set forth the applicable facts, in a memorandum ruling a motion for new trial, that we quote and adopt it in full as follows.

"Viewing the facts, as of this time, most favorably to the plaintiffs, as required under the rule on a motion to reverse the jury's finding, we find that the defendant knowingly permitted a powder magazine to stand in disuse for many years in an open field that was much traveled and used by the public, and near a public road and a private road. The public had made paths across the field by their use. Defendant had constructed stiles for the public to cross over the fences into the fields. The tract was not entirely fenced. Children were known to play in the field and about and on the powder magazine when it was in disuse. Men trained their dogs in the field and discharged firearms. Only at the extreme northwest corner were any signs posted indicating the defendant's objection to use of the field by the public. The signs were posted where a private wagon road entered the field. Residences were within two hundred yards of the powder magazine. It was from one of the homes so situated that the deceased, joining with a companion who lived in the home, started on the venture that resulted in his death. The field in which the powder magazine was located adjoined two villages. Under these conditions and with these surrounding circumstances defendant renovated the powder house and placed a large quantity of dynamite caps in boxes in the house. The boxes were piled on runners to a height of about five feet. Thereafter defendant made no effort to warn those it knew were using the tract of land of the presence of explosives in the powder magazine. It neither fenced the magazine nor posted notice of any kind. What caused the explosion no one knows. It was defendants implication during the trial that the deceased fired a rifle shot against the door of the magazine. There is not the slightest evidence that the steel door was penetrated by a rifle shot. The lock was so applied that the key did not go entirely through the door. The issue of the deceased shooting at the magazine was submitted to the jury and the jury found against the defendant on it. An explosion did occur from unknown causes with such force that the powder magazine, made of ten inch concrete reinforced walls, was demolished and left rubble. Three people, including the son of the plaintiffs, were killed. Houses in the vicinity were damaged."

Also, we approve and adopt, as certainly true, the trial court's conclusion "that whether or not the existence of the powder magazine, under the circumstances shown by this record, was a nuisance, was a question for the jury."

The judgment is affirmed.