386 So.2d 1259 (1980)
Stanley MARKS, Herman Marks, Paul Marks, and Eugene D. Marks, D/B/a Marks Brothers Company, a Partnership, and Liberty Mutual Insurance Company, Appellants,
v.
Martin Jose DELCASTILLO, As Personal Representative of the Estate of Martin Alfredo Delcastillo, a Deceased Minor, and Jorge Luis Delcastillo, a Deceased Minor, Appellee.
No. 78-1777.
District Court of Appeal of Florida, Third District.
August 5, 1980.
Rehearing Denied September 18, 1980.
*1260 Magill, Sevier & Reid, Miami, Pattillo, McKay & McKeever and L. Edward McClellan, Jr., Ocala, for appellants.
Spence, Payne, Masington & Grossman, Podhurst, Orseck & Parks and Joel D. Eaton and Walter H. Beckham, Jr., Miami, for appellee.
Before SCHWARTZ and PEARSON, DANIEL, JJ., and VANN, HAROLD (Ret.), Associate Judge.
SCHWARTZ, Judge.
On August 26, 1972, a trailer-"magazine" containing over ten tons of dynamite exploded with monumental force in a remote area of northwest Dade County. The bodies of three persons on the scene were literally obliterated by the blast. Two of them, Martin and Jorge Delcastillo, 18 and 14 years old respectively, were the children of *1261 Martin and Ada Delcastillo. As the personal representative of their estates, Mr. Delcastillo brought wrongful death actions against the Marks Brothers Company, a partnership engaged in the construction business, which owned the "magazine" and its contents and was in possession  by permission of the owner  of the property on which it was located. After a lengthy trial, the jury found each boy 30 percent, and Marks Brothers 70 percent negligent in the causation of the accident. In the separate verdicts required by Section 768.22 Florida Statutes (1977), it awarded damages, as reduced by the 30 percent comparative negligence, of $980,000 to the mother and father  $245,000 to each parent for the death of each child  and a total of $206,500 to the decedents' estates, $105,000 to Jorge's and $101,500 to Martin's. Marks Brothers has appealed from the judgment entered in accordance with the verdicts. We affirm the parents' awards and reverse those to the estates.

I
The appellants' first and major contention is that they were entitled to a directed verdict in their favor below. We find to the contrary. Viewed, as required, in the light most favorable to the appellee,[1] the record amply supports the determination that Marks Brothers breached the duty it owed the Delcastillo boys, as licensees on land it controlled, to warn them of a "condition known ... to be dangerous when such danger is not open to ordinary observation"[2] and was therefore liable for their deaths.
So considered, the record shows as follows. The dynamite trailer, which was used in connection with blasting operations conducted by Marks Brothers in the vicinity, was located on an otherwise vacant tract of land near the eastern edge of the Everglades, bounded on the east by N.W. 117th Avenue and on the south by a dirt extension of N.W. 41st Street. A dirt road running westerly from N.W. 117th Avenue provided access to the interior portion of the parcel where the trailer-magazine had been placed. While a steel cable, stretched between two posts across the road, served to keep unauthorized vehicles out of the area, persons on foot had easy access to the trailer and the entire parcel, either down the road itself, or by gaining entry from any other direction by climbing an embankment and walking through marshland.
There was overwhelming evidence that, for a long time prior to the tragedy and to the actual knowledge of the defendant-partnership and its employees, many persons had taken advantage of the ready availability of the parcel. Scattered around the perimeter of the property, at points no more than a few hundred yards from the dynamite, were piles of trash, discarded automobiles and appliances, old tires and other assorted junk. The entire area, in short, had taken on the character of a local dump. Portentously, it had also become a neighborhood shooting gallery. As Marks Brothers was specifically aware, those who frequented the parcel (including, on at least two occasions, Martin Delcastillo) had regularly used it for target practice. Indeed, the sides of the trailer itself were pockmarked by bullet holes.[3]
On the day of the accident the Delcastillo boys, after telling their parents where and why they were going, went to the area with an older companion for target practice. They carried a .22 rifle and a 12 gauge shotgun. Within a half hour after they were last seen alive, the trailer exploded with such awful force that it left a crater 65 feet wide and 15 feet deep as virtually the only evidence of its previous existence. The trailer had had an aluminum skin surface and its interior was lined with four inch thick oak beams. The rear and side *1262 doors, which were covered by metal plate, were permanently closed; the front door was fitted with a theft-resistant lock and was covered with one-quarter inch steel. The entire facility rested on tires attached to steel axles, imbedded in the ground, upon which it had been pulled by a tractor onto the area. After the explosion, only tiny bits of metal and splinters of wood remained of the trailer; the tires and steel axles had entirely disappeared. The three human beings were so totally disintegrated that their deaths could be established only circumstantially. It was inferred from the extent of the destruction of their bodies that when the trailer exploded they were either actually inside it, as the defendants' experts testified, or no more than 30 feet away.
The devastation wrought by the blast also made it impossible to establish the circumstances of the manner which brought it about. Both sides presented expert opinions which in each case essentially amounted to no more than informed speculation on the issue. It was generally agreed, however, that since the trailer could not have been penetrated simply by a single stray or deliberately-aimed bullet, the explosion must have occurred either after the magazine door had been opened in some manner or by the detonation of the entire trailer from an outside source. The theories as to how either such event might have taken place included the possibility that the three boys had deliberately broken into the trailer in order to steal the dynamite  a theory contrary to all the known facts about the decedents and which would have required the use of specialized equipment which they did not possess. Other, more likely scenarios included, inter alia, (a) the setting off of a loose stick of dynamite outside the trailer,[4] either by one of the boys' firing at it or otherwise; and (b) an attempted burglary of the trailer by others[5] in which the burglars set off the blast or in which the front door was left open and then accidentally fired into.
It is as unnecessary and inappropriate, however, as it is impossible to pinpoint the precise sequence of events which occurred on that day. It is certain that the immense capacity for harm presented by 21,000 pounds of dynamite came into fruition and that three persons who were very near were killed as a result. Under these circumstances, we think what was said nearly a century ago in Tissue v. Baltimore & O.R. Co., 112 Pa. 91, 3 A. 667, 668-69 (1886) particularly appropriate:
As it is impossible to tell what was the immediate cause of the explosion, it would be by no means fair to charge it to the negligence of any one.
* * * * * *
The act of putting the magazine where it was may have been prudent, or at least not unreasonably imprudent, and the explosion may have been the result of an accident which no ordinary human foresight could provide against; hence one for which no one can be held responsible. But, however this may be, the matter is, under all the evidence, for a jury, and to a jury it must be referred.
See also the factually remarkably similar case of St. Joseph Lead Co. v. Prather, 238 F.2d 301 (8th Cir.1956).
Of course, in this as in every case, a jury is permitted to impose liability only within the ambit of the law; there must be evidence of a breach of a duty owed by the defendants to persons in the status of the plaintiff's decedents. Such evidence exists in abundance in this record. In view of Marks Brothers' knowledge of the fact that many persons had used the property in question over a lengthy period of time, it is clear, as was held in Libby v. West Coast Rock Co., Inc., 308 So.2d 602 (Fla.2d DCA 1975), cert. denied, 325 So.2d 6 (Fla. 1975), and Seaboard Air Line R. Co. v. Branham, 99 So.2d 621 (Fla.3d DCA 1958), cert. discharged, *1263 104 So.2d 356 (Fla. 1958), that the decedents were implied or uninvited licensees on the premises. See Morris v. Florida C.&P.R. Co., 43 Fla. 10, 29 So. 541 (1901); Wytupeck v. City of Camden, 25 N.J. 450, 136 A.2d 887 (1957) and cases cited; Davis v. Chicago & N.W.R. Co., 58 Wis. 646, 17 N.W. 406 (1883); W. Prosser, Law of Torts § 58, at 361 n. 98 (4th Ed. 1971); 62 Am.Jur.2d Premises Liability § 51 (1972); see generally Wood v. Camp, 284 So.2d 691 (Fla. 1973). The Libby case also elucidates, in the essentially interchangeable terms of both the Florida and the Restatement formulations of the rule, the duty owed by a landowner[6] to such persons:
The duty owed a licensee is to refrain from wanton negligence or willful misconduct which would injure him, to refrain from intentionally exposing him to danger and to warn him of a defect or condition known to the landowner to be dangerous when such danger is not open to ordinary observation by the licensee. Post v. Lunney, Fla. 1972, 261 So.2d 146; McNulty v. Hurley, Fla. 1957, 97 So.2d 185.
* * * * * *
Our holding is consistent with § 342 of the Restatement of Torts 2d, which states:
§ 342. Dangerous Conditions Known to Possessor
A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
(c) the licensees do not know or have reason to know of the condition and the risk involved. [e.s.] 308 So.2d at 604-05.
As we have already indicated, we have concluded that the jury could properly have found a breach of that portion of the duty imposed by these authorities which requires the landowner to give warning of a dangerous condition, the dynamite on its premises.[7] In arguing to the contrary, the appellants primarily[8] make the interrelated *1264 claims (a) that no specific warnings were required at all because the dangers presented by the dynamite were "open to ordinary observation," so that, in terms of the Restatement, Marks Brothers should not have expected that licensees "would not discover or realize the danger" and (b) that if warnings were arguendo required, they had in fact been provided. The record is contrary to both of these contentions.
Jury Question as to Whether Danger of Dynamite was "Open to Ordinary Observation." The testimony of those who lived for months near the dynamite magazine without any knowledge of its supremely dangerous nature is itself ample evidence, contrary to the appellants' assertion, that the risks involved were not open to the ordinary observation of licensees like the Delcastillo boys. A couple, Mr. and Mrs. McCord, and another neighbor, Mr. Davis, who lived on property adjacent to the tract, all stated that they had no idea that dynamite was present during the entire year-and-a-half that the trailer had been located on the parcel. Davis testified that he had actually seen the trailer brought on the property and had regularly gone "junking" and shooting in the area, all without recognizing the trailer for what it was. He stated with emphasis that, if he had known that dynamite was being stored on the property next to his, he would have moved from the area. It is therefore (if we may appropriately use the expression in this context) perfectly clear that there was nothing about the trailer itself which served to make its contents  which constituted the danger  an "open and obvious" condition. To the contrary, by concealing what lay within its interior, the trailer's exterior had just the opposite effect. The cases upon which the appellants rely, all of which involve dangerous conditions which were completely open to view, are thus entirely inapposite. Cf. Bovino v. Metropolitan Dade County, 378 So.2d 50 (Fla.3d DCA 1979) (motorcycles in operation); Rice v. Florida Power & Light Co., 363 So.2d 834 (Fla.3d DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979) (overhead power line); Libby v. West Coast Rock Co., Inc., supra (open mine pit).
On this question (as well as on the related warning issue discussed infra) the appellants also contend that the dangers of the explosives were rendered open and obvious by the admitted fact that the boxes of dynamite themselves were clearly and plainly labelled as such. For two reasons, we find no merit in this position. First, it assumes, contrary to what the jury was entitled to find, that the Delcastillos were actually inside the trailer where the boxes could be seen when the explosion occurred. Second, even if that were true, it is plain that a danger cannot be obvious within the meaning of the licensee rule if it becomes so only when it is too late for that danger to be obviated by those who are confronted by it. The fact that one may see the bottom of an otherwise concealed hole as he is falling through it does not make the danger it presents an obvious one.[9]
Jury Question as to Warnings. Marks Brothers' alternative argument that sufficient warnings were in fact provided is likewise unacceptable.
*1265 (a) While there was evidence that there were one or more signs on the perimeter of the property which read "No Trespassing," "No Shooting," or "Keep Out," these general notices were plainly insufficient to discharge the defendants' duty to give warning of the great and specific danger of explosives lurking in the interior of the tract. St. Joseph Lead Co. v. Prather, supra;[10] see generally, Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla. 1958); Mathis v. National Laboratories, 355 So.2d 117 (Fla.3d DCA 1978); Brevard County v. Jacks, 238 So.2d 156 (Fla. 4th DCA 1970).
(b) The key question, then, was whether sufficient warnings in the form of signs at or near the trailer itself giving specific notice of the danger of dynamite were in place before the accident. On this issue, the evidence was in complete and hopeless conflict, which it was for the jury alone to resolve. On several bases, it was fully warranted in concluding that no such signs were there.
(1) The pieces of circumstantial evidence (i) that no trace of any signs (including those which had been allegedly placed beyond the area of total destruction) was found after the accident and (ii) that guns had been regularly fired at the trailer, see note 3 supra, both strongly indicate that no signs were in existence before the explosion.
(2) Mr. Davis specifically and affirmatively testified that he had been in the immediate area of the trailer and that, for a period of months prior to the accident, no such signs existed. The defendants earnestly contend that Davis's evidence is merely "negative" testimony which is of no value. We disagree. A careful analysis of his evidence reveals that it falls within the class of probative testimony aptly described in American Motorists Ins. Co. v. Battista, 370 So.2d 445, 446 (Fla.1st DCA 1979):
"... the [witness] did not testify that `I saw nothing,' but rather stated, in essence, that `I looked where I should have been looking and there was nothing to see.'"
Accord, Welfare v. Seaboard Coast Line R. Co., 373 So.2d 886 (Fla. 1979); Tyus v. Apalachicola Northern R. Co., 130 So.2d 580 (Fla. 1961).
*1266 (3) Finally, even the testimony of Marks' own employees who testified to the existence of these signs was in total internal disarray. Some stated that there were signs on the trailer,[11] but not anywhere else; others, that the warnings were placed on posts or trees some distance away, but not on the trailer. The jury was free to believe the testimony of each of these witnesses that there were no signs at a particular location while disbelieving his statements that signs were present elsewhere. E.g., Wynne v. Adside, 163 So.2d 760 (Fla.1st DCA 1964) (applying rule that trier of fact may accept some parts and reject others of the testimony of a particular witness); Bailey v. Sympson, 148 So.2d 729 (Fla.3d DCA 1963) (same). Thus, the defendants' own case provided sufficient ground for a conclusion that no signs were present.[12]
(c) For precisely the same reasons we have already determined that the printing on the boxes of dynamite inside the trailer did not render their danger "open and obvious," we reject the concomitant contention that the labels discharged the duty to warn. Again, the jury was entitled to find that the boys had not entered the trailer when they were killed. Even if they had, however, the duty to warn means the duty to warn adequately. See Tampa Drug Co. v. Wait, supra. Warnings are not adequate when they are not given in time for the person supposedly warned to escape the dangerous condition in question  as in the case of one made aware of the fact that dynamite is present only immediately before it explodes. See Carroll v. Moxley, 241 So.2d 681, 683 (Fla. 1970); 1661 Corp. v. Snyder, 267 So.2d 362 (Fla.1st DCA 1972); compare Brown v. Thomas Blackwell Coal & Mining Co., 124 Ky. 324, 99 S.W. 299 (1907).
In sum, the jury could have found that the defendants maintained a horrendously dangerous commodity hidden on its premises without giving effective or adequate warning of its existence. The law of Florida provides a remedy when licensees like the plaintiffs' sons are injured or killed as a result of such conduct. Seaboard Air Line R. Co. v. Branham, supra. See generally, Annot., Explosives  Liability, 35 A.L.R.3d 1177 (1971).

II
In their second point, the appellants claim that a new trial should be granted because of the admission of parts of the depositions of Mr. and Mrs. McCord which indicated that they had satisfactorily settled their own claims for damages arising out of the explosion. See, Dade County v. Clarson, 240 So.2d 828 (Fla.3d DCA 1970); City of Coral Gables v. Jordan, 186 So.2d 60 (Fla.3d DCA 1966), aff'd, 191 So.2d 38 (Fla. 1966); but see Compania Dominicana de Aviacion v. Knapp, 251 So.2d 18 (Fla.3d DCA 1971), cert. denied, 256 So.2d 6 (Fla. 1971). We do not consider the merits of this contention because the record does not show that the issue was properly preserved by an appropriate objection below.
The McCords' depositions were proffered as the plaintiff's first items of evidence at the trial. Prior to their being read, an unreported side-bar conference was conducted in which the trial judge considered the defendants' objections. The transcript shows that some of the questions and answers which appear in the depositions were not read to the jury. At a hearing held months afterward to reconstruct the record,[13] the plaintiff's lawyer testified that these were the only ones objected to at the side-bar; defense counsel stated that he had also objected to others which are now claimed as error on appeal. The trial judge *1267 ruled that he had no independent recollection of the incident and was unable to resolve the controversy.[14] Since the appellants have therefore failed to carry their burden of showing otherwise in the record, we are thus compelled to presume that the testimony now in issue was not in fact objected to. Haist v. Scarp, 366 So.2d 402 (Fla. 1978); see Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979).
There is no question that such a failure to object to evidence at the trial precludes appellate review of the propriety of its admission. McSwain v. Howell, 29 Fla. 248, 10 So. 588 (1892); Tabasky v. Dreyfuss, 350 So.2d 520 (Fla.3d DCA 1977). Moreover, the fundamental error exception to this rule does not apply, since an alleged evidentiary error of this kind plainly does not go to the heart or the foundation of the case. Clark v. State, 363 So.2d 331 (Fla. 1978); Russell v. Wainwright, 266 So.2d 375 (Fla.4th DCA 1972); Ross v. Florida Sun Life Ins. Co., 124 So.2d 892 (Fla.2d DCA 1960). To put the issue in a somewhat different way which we think also accurately expresses the fundamental error doctrine: while the evidence in question was undoubtedly harmful to the defendants' position, it surely cannot be said that it is certain, or even highly probable, that the plaintiff would or could not have prevailed before the jury if, upon proper and timely objection, the offending testimony had been excluded at the trial. Since this is so, it cannot be said to have been fundamental to the case. Compare, e.g., Fee, Parker & Lloyd, P.A. v. Sullivan, 379 So.2d 412 (Fla.4th DCA 1980), and cases cited. The principle that it is impermissible for a party to raise a claim of error  which could have been obviated if timely presented  only after the jury has already ruled against him, therefore directly applies. See Diaz v. Rodriguez, 384 So.2d 906 (Fla.3d DCA 1980).[15]

III
Because, in contrast, the fundamental error doctrine does apply to the damages recovered by the boys' estates, we reverse those awards. As the jury was instructed, the estates were awarded damages for their "loss of net accumulations." Under the clear terms of Section 768.21(6)(a), Florida Statutes (1977), however, such losses are recoverable only when, as was not true in this case in which the boys were survived by their parents, the decedent leaves a spouse or lineal descendants. Bassett v. Merlin, Inc., 335 So.2d 273 (Fla. 1976); see White v. Clayton, 323 So.2d 573 (Fla. 1975). These aspects of the final judgment are thus totally unsupported by the applicable law.
The appellee agrees that this is true. He argues, however, that the issue was not properly preserved below because defense counsel did not make his objection to the proposed instruction on the issue on this ground, but rather on the basis that there was no evidence in the record of the amount of the lost accumulations.[16]Henningsen v. Smith, 174 So.2d 85 (Fla.2d DCA 1965), and many similar cases are cited for the proposition that only the grounds of objection to jury charges asserted below may be considered on appeal. However, the rule does not apply to this point. The estates have recovered damages to which they have no right under the law. Such an error is a fundamental one which requires reversal notwithstanding the lack of appropriate *1268 objection at the trial.[17] As this court recently held in Keyes Co. v. Sens, 382 So.2d 1273, 1276 (Fla.3d DCA 1980):
The rule that questions not presented to and ruled upon by the trial court are not reviewable on appeal is subject to the exception that an appellate court may consider and rule upon a constitutional or fundamental error when first raised or revealed on the record on appeal. Love v. Hannah, 72 So.2d 39, 43 (Fla. 1934); Ewing v. Dupee, 104 So.2d 672 (Fla.2d DCA 1958); Florio v. State ex rel. Epperson, 119 So.2d 305, 309 (Fla.2d DCA 1960); In re: Kionka's Estate, 121 So.2d 644, 647 (Fla. 1960); Sanford v. Rubin, 237 So.2d 134, 137 (Fla. 1970); American Home Assurance Co. v. Keller Industries, 347 So.2d 767, 772 (Fla.3d DCA 1977). In Sanford v. Rubin, supra, the court said:
"`Fundamental error,' which can be considered on appeal without objection in the lower court, is error which goes to the foundation of the case or goes to the merits of the cause of action. The Appellate Court should exercise its discretion under the doctrine of fundamental error very guardedly."

The error of imposing on a defendant compensatory damages which are not authorized by law and which are contrary to law is one that goes to the ultimate merits of the cause. Cf., American Home Assurance Co. v. Keller Industries, supra. Moreover, such an error is one of constitutional dimension, for the reason that enforcement of such a judgment would constitute a taking of property from the defendant without due process of law. [e.s.]
See also, Florida East Coast R. Co. v. Rouse, 194 So.2d 260 (Fla. 1967); Townsend v. Beck, 140 Fla. 553, 192 So. 390 (1939). Applying the tests of fundamental error we have already suggested,[18] (i) it is a certainty that the estates may not and would not have received their portions of the verdict, and (ii) the error may be corrected without requiring a retrial, simply by eliminating the estates' separate awards.[19] That must therefore be done.
For these reasons, those portions awarding damages for the estates of the decedents shall be stricken from the judgment under review, which is otherwise entirely affirmed.
Affirmed in part, reversed in part.
NOTES
[1] Gravette v. Turner, 77 Fla. 311, 81 So. 476 (1919); Tiny's Liquors, Inc. v. Davis, 353 So.2d 168 (Fla.3d DCA 1977).
[2] McNulty v. Hurley, 97 So.2d 185, 187 (Fla. 1957).
[3] As noted infra, this fact itself provided a strong indication that there were no effective warnings that there was dynamite inside the trailer.
[4] Several unexploded sticks were found in the crater after the blast.
[5] This might have been effected with dynamite caps secured from a steel locker 300 feet from the trailer which bore signs of having been broken into.
[6] As the "occupier" or "possessor" of the property, Marks Brothers stood in the shoes of the owner. See Cockerham v. R.E. Vaughan, Inc., 82 So.2d 890 (Fla. 1955).
[7] Because of this holding, it is unnecessary to consider whether the defendants' actions may have amounted to wanton and willful misconduct.

We also do not reach the question of whether licensees may recover upon a showing of a breach of Section 12.09(2) Code of Metropolitan Dade County (1969), which provides:
(2) Storing explosives. Every person in possession of any explosive shall cause the same to be stored in a safe place and shall maintain such security measures as shall be reasonably necessary to prevent all unauthorized persons from gaining access to such explosives. Any person who shall fail to use reasonable precautions for the security and safety of explosives in his possession shall be deemed guilty of violating this chapter, and subject to the penalties provided for herein, and in addition thereto, shall be subject to revocation of his permit.
See and compare, de Jesus v. Seaboard Coast Line R. Co., 281 So.2d 198 (Fla. 1973); Cuyahoga Wrecking Co. v. Mastres, 368 So.2d 380 (Fla.3d DCA 1979), cert. dism., 375 So.2d 911 (Fla. 1979); Schulte v. Gold, 360 So.2d 428 (Fla.3d DCA 1978), cert. denied, 368 So.2d 1367 (Fla. 1979); Richardson v. Fountain, 154 So.2d 709 (Fla.2d DCA 1963), cert. denied, 157 So.2d 818 (Fla. 1963).
[8] It is self-evident that the dynamite was known to Marks Brothers to be dangerous in the extreme and thus to involve an "unreasonable risk of harm" to licensees. Morse v. Hendry Corp., 200 So.2d 816 (Fla.2d DCA 1967). Moreover, even the appellants do not seriously urge that, as a matter of law, they complied with the duty stated in 2 Restatement (Second) of Torts § 342(b) (1965), as an alternative to giving warnings, "to exercise reasonable care to make the condition safe." The precautions deemed necessary in discharging a particular duty of reasonable care are ordinarily for the jury to decide. Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla.3d DCA 1980); Acme Electric, Inc. v. Travis, 218 So.2d 788 (Fla. 1st DCA 1969), cert. denied, 225 So.2d 917 (Fla. 1969). It is also well-established that the amount of care required increases with the dangerousness of the agency involved and thus with the likelihood of injury, see Carter v. J. Ray Arnold Lumber Co., 83 Fla. 470, 91 So. 893 (1922); cf., Escambia County Electric Light & Power Co. v. Sutherland, 61 Fla. 167, 55 So. 83 (1911). The record shows that another company which stored dynamite less than twenty blocks from the Marks Brothers had erected a fence a substantial distance from its magazine and posted armed guards on continuous duty in order to keep the unwary out of harm's way; the jury would have been well-justified in concluding that the defendants should have taken the same precautions. See Holley v. Mt. Zion Terrace Apartments, Inc., supra; Homan v. Dade County, 248 So.2d 235 (Fla.3d DCA 1971).
[9] We reject the defendants' claim that the finding of comparative negligence necessarily demonstrates that the plaintiff's decedents had become actually aware of the dynamite but disregarded its dangers. The jury could even more easily have based its determination of contributory negligence upon, for example, the boys' negligent shooting of a firearm in the area, without any knowledge of the dynamite at all.
[10] In the Prather case, the trial judge made the following uncannily similar finding in imposing liability:

Viewing the facts, as of this time, most favorably to the plaintiffs, as required under the rule on a motion to reverse the jury's finding, we find that the defendant knowingly permitted a powder magazine to stand in disuse for many years in an open field that was much traveled and used by the public, and near a public road and a private road. The public had made paths across the field by their use. Defendant had constructed stiles for the public to cross over the fences into the fields. The tract was not entirely fenced. Children were known to play in the field and about and on the powder magazine when it was in disuse. Men trained their dogs in the field and discharged firearms. Only at the extreme northwest corner were any signs posted indicating the defendant's objection to use of the field by the public. The signs were posted where a private wagon road entered the field. Residences were within two hundred yards of the powder magazine. It was from one of the homes so situated that the deceased, joining with a companion who lived in the home, started on the venture that resulted in his death. The field in which the powder magazine was located adjoined two villages. Under these conditions and with these surrounding circumstances defendant renovated the powder house and placed a large quantity of dynamite caps in boxes in the house. The boxes were piled on runners to a height of about five feet. Thereafter defendant made no effort to warn those it knew were using the tract of land of the presence of explosives in the powder magazine. It neither fenced the magazine nor posted notice of any kind. What caused the explosion no one knows. It was defendants' implication during the trial that the deceased fired a rifle shot against the door of the magazine. There is not the slightest evidence that the steel door was penetrated by a rifle shot. The lock was so applied that the key did not go entirely through the door. The issue of the deceased shooting at the magazine was submitted to the jury and the jury found against the defendant on it. An explosion did occur from unknown causes with such force that the powder magazine, made of ten inch concrete reinforced walls, was demolished and left rubble. Three people, including the son of the plaintiffs, were killed. Houses in the vicinity were damaged. 238 F.2d at 306.
[11] There was evidence, which tended to negate this possibility, that it was unlawful to attach a warning sign directly to an explosive magazine.
[12] We similarly find no merit in the defendants' additional argument that they were not on actual or constructive notice that signs, which employees testified had been originally placed near the trailer, had been subsequently torn down or removed.
[13] We relinquished jurisdiction to the trial court for this purpose. Fla.R.App.P. 9.200(f)(2).
[14] The court did observe that he thought it improbable that the defendants' attorney would not have made the objections in question. We think it, however, even more unlikely that the able and experienced trial judge would not have sustained the objections, if they had been presented to him.
[15] We tentatively suggest the following as a shorthand-rule of thumb approach to this and related questions as they apply to civil cases: fundamental error occurs when the result would have been different; reversible error, when the result might have been different; harmless error, when it would not have been different.
[16] This contention was acknowledgedly incorrect. No specific testimony on the issue is required to support such an instruction or award. Threets v. Hardison, 255 So.2d 267 (Fla. 1971); Laskey v. Smith, 239 So.2d 13 (Fla. 1970).
[17] The plaintiff cites Bould v. Touchette, 349 So.2d 1181, 1186 (Fla. 1977) in support of his contention that fundamental error was not involved. In Bould, the supreme court held that the defendant, by failing to object to evidence relating to a legally unrecoverable element of damage, had consented, acquiesced and in fact invited the error allegedly involved. In essence, the defendant was deemed to have become estopped to claim that error had in fact occurred. Bould plainly has no application to this situation. The plaintiff concedes that there was no evidence whatever introduced on the accumulations issue at the trial. Indeed, even though the position was incorrect, see note 16, supra, this was the gist of the objection to the instruction asserted by the defendant below. They did nothing at all to induce or invite the error now in question, much less estop themselves from asserting it.
[18] See note 15, supra, and accompanying text.
[19] A different question might be involved if an unauthorized item of damage were included along with proper elements in a general verdict, making it impossible to determine what amount was incorrect without a new trial. The "two-issue" rule might also prevent reversal in such a situation. See Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1978).