## DEMOSTHANES v. MOODY DRIVE SHOPPING CENTER, LTD.
No. 82-277 AP

Eleventh Judicial Circuit, Dade County, Appellate Division

July 1, 1982

Appeal from County Court, Harvey L. Goldstein, Judge

Jeffrey M. Feuer, for appellant.

Alan M. Medof, for appellee

Before HENDERSON, GODERICH, concurring

SALMON, dissents

PER CURIAM

Affirmed

Appellants, Stella and Paul Demosthanes, appeal from a final judgment for unpaid rents, entered in favor of appellee, Moody Drive Shopping Center, Ltd., pursuant to non-jury trial. Appellants maintain that the court erred in admitting into evidence a "wild" lease (plaintiff's exhibit 3.) rather than the lease attached to appellee's complaint. We hold that there was no reversible error and affirm.

Appellants, who were in the restaurant business, leased certain business premises from appellee.[1] Thereafter, appellants assigned the lease[2] to a restaurant known as Stella and Paul's Inc., a Florida Corporation, the stock of which was owned by appellants. The assumption agreement contained the following language:

> In the event that any of the stock holders of Stella and Paul's Inc., a Florida Corporation, transfer their interest in this corporation that the original lessees, Paul and Stella Demosthanes, shall remain personal guarantors of that certain lease entered into on behalf of Moody Drive Shopping Center Ltd. and Paul and Stella Demosthanes, personally dated October 10, 1977.

On January 22, 1980, Martin Boothe entered into an agreement to purchase, from appellants, the restaurant known as Stella and Paul's

---

[1] At trial, appellant, Paul Demosthanes, testified that he leased certain business premises from appellee. Subsequently, Arthur Newman became a general partner of appellee.

[2] At the non-jury trial, Newman ttestified that he allowed appellants to assign the lease to their corporation, Stella and Paul's Inc. only on the condition that appellants remain personally liable under the terms of the lease.

Inc. That agreement provided that until the sum of $6,500.00 was paid by Boothe, "stock certificates were to be held in escrow by escrow agent Jeffrey M. Fueuer". Thereafter, Boothe took possession of the premises and purportedly paid rent thereon through December of 1980. In January of 1980, Boothe vacated the premises, leaving same "stripped" and in a state of disrepair.

In January of 1981, appellee commenced an action for unpaid rents against appellants individually and as assignors.[3] Attached to the complaint, as exhibit A, was a business lease, dated October 10, 1977, between appellee as lessor and appellants as lessees. Appellants, in both their amended answer and motion for summary judgment, assert that the aforementioned lease has been cancelled due to the untenanability of the premises.[4] In their motion for summary judgment, appellants alluded to a letter dated April 15, 1981 from appellants' attorney, Jeffrey Fueuer, to Arthur Newman. The contents of that letter is as follows:

> This is to advise that pursuant to the lease agreement, dated October 10, 1977, on the above premises, paragraph FOURTH, my clients, Stella and Paul Demosthanes, as officers of Stella and Paul's Inc., hereby exercise their option to cancel this lease as a result of the casualty loss to the premises some three and one half months ago. (Such letter was admitted into evidence as a defense exhibit).

Appellants, in their amended answer, additionally argue as follows:

FIRST AFFIRMATIVE DEFENSE

2. As and for its first affirmative defense Stella and Paul Demosthanes, Defendants, allege that by virtue of an assignment

---

[3]Martin Boothe also was named as a defendant, both individually and as assignee d/b/a Dixie Restaurant (the ficticious name under which Stella and Paul's Inc. was registered). Final summary judgment was entered in Boothe's favor, apparently on the theory that Stella & Paul's Inc. had been transferred to him.

[4]Paragraph four of the lease provides as follows: "In the event the premises shall be destroyed or so damaged or injured during the life of this agreement, whereby the same shall be rendered untenanable, then the lessor shall have the right to render the premises tenanable by repairs within 90 days therefrom. If said premises are not rendered tenanable within that time within said time, it shall be optional with either party hereto to cancel this lease, and in the event of such cancellation the rent shall be paid only to the date of such fire or casualty. The cancellation herein mentioned shall be evidenced in writing."

[5]The court found in its final judgment that appellee was put on notice no later than February of 1981 that the premises were untenanable and therefore the lease was properly cancelled by appellants in April of 1981.

of contract said lease was transferred from appellants, individually, to Stella & Paul's Inc., a Florida Corporation.

3. That said assignment specifically states that appellants shall remain personal grantors in the event that any of the stockholders transfer their interest in this corporation.

4. That from the date of the assignment to the present, appellants have remained the only and sole stockholders of the corporate stock.

5. That any action by the plaintiff is rightfully against the corporation and not appellants, individually.

The cause proceeded to non-jury trial before Judge Goldstein on July 23, 1981. It appears that as Plaintiff's exhibit 3, a business lease, dated March of 1980, between appellee and Martin Boothe, as president of Stella & Paul's Inc., d/b/a as Dixie Kitchen, was admitted into evidence. Appellants did *not* object to the admission of this exhibit into evidence. It would seem, however, that the parties really intended to admit into evidence the business lease dated October 10, 1977 between appellants and appellee, which lease was attached to appellee's complaint. This lease was referred to by both parties throughout the trial. In fact, at the commencement of trial, appellee's attorney, Alan Medof, indicated that the parties had "stipulated to the original lease between the parties". Moreover, appellee admitted into evidence the assignment agreement which made reference to the lease of October 10, 1977. Appellants, in turn, admitted into evidence the aforementioned letter of April 15, 1981, which also referred to the lease of October 10, 1977.

The cause was heard non-jury before JUDGE GOLDSTEIN on July 23, 1981. The major issues raised at trial were a) whether or not the lease of October 10, 1977 should be cancelled due to the untenanability of the premises and b) whether or not the stock of Stella and Paul's Inc. had been transferred to Boothe so as to make appellants personal guarantors of the lease under the terms of the assignment. During his argument, defense counsel Fueuer seemed to concede the existence of a valid lease between appellants and appellee and argued that such lease was cancelled due to the untenanability of the premises. Appellant, Paul Demosthanes, in fact, admitted entering into such a lease as evidenced by the following colloquy between him and Fueuer:

Q. Did you have an occasion to have a lease with Mr. Newman about the premises that we are talking about . . . ?

A. I have the lease from the previous owners, not with Mr. Newman. Then Mr. Newman bought the (Moody Drive) Shopping Center.

Further, on cross examination appellant Paul Demosthanes testified as follows:

Q. Do you consider that restaurant business to be owned by Mr. Boothe?

A. Yes, sir.

On August 4, 1981, Judge Goldstein rendered final judgment in favor of appellee. Therein, appellee was awarded unpaid rents for the months of January through April of 1981.

The court found as follows:

The court finds that the agreement between (appellants and Boothe) admitted into evidence as plaintiff's exhibit 5, was an agreement for the purchase of the corporation, Stella and Pual's from (appellants) to Boothe and that the retention of the stock certificates in escrow as security purposes only, and that there was a transfer of (appellant's) interest in said corporation to Boothe rendered appellants personally liable to appellee, as personal guarantors of payment of rent, pursuant to plaintiff's exhibit 4, typed portions only.[6]

On July 24, 1981—the day after trial—a brief hearing was held before Judge Goldstein. At this hearing, attorney Fueuer, for the first time, pointed out that the wrong lease had been admitted into evidence. Fueuer argued as follows:

Had the proper lease been put into evidence and the improper lease not been in the court file, the court would not have had the improper lease in front of it under which it has made an assumption that Mr. Boothe has bought the corporation and that the stock was held only for security. That lease would have been excluded as irrelevant and therefore it's a piece of evidence under which the court is relying again that would not have been available to the court and which the plaintiff would have had the opportunity to present that if he wanted to, but he didn't, that wasn't part of his case. They could have presented evidence as to whether the stock transferred to the Secretary of State's office. They had the opportunity to—it is

---

[6]There were certain handwritten additions to the assignment which the court found not to be binding on the parties.

not even a question of interpretation. You are looking at a piece of supposed evidence that was never intended to be evidence, that was never stipulated by defense counsel which the court is using as an underlying reason for putting personal liability on the defendants and to which you wouldn't have had in front of you for perusal for any purpose and based on the evidence you had yesterday, I am as certain as I can be there would have been no personal liability but because of the conclusions drawn under this "wild" lease, you have therefore changed your opinion of whether the stock actually transferred."

At the hearing, Judge Goldstein candidly admitted that the "wild" lease had an influence on his ruling. However, the court then went on to state:

I don't want the record to indicate that was the only reason that the court would have possibly have ruled, there were individual rules or that was the main reason, but it did effect the scales in tipping.

The court was faced with a quandry—should it reopen the case so as to allow the proper lease into evidence or should it grant a mistrial. Attorney Fueuer suggested that the court did not have grounds to grant a mistrial. Presumably, the trial court neither granted a mistrial nor reopened the case.

On appeal, appellants argue that the court erred in basing its final judgment on the lease agreement of October 10, 1977, when same was never admitted into evidence. Also, appellants assert that the court's finding of personal liability on their part was improperly based on impermissible evidence, i.e., the "wild" lease.

If improper evidence is admitted, the error is harmless where there is ample, proper evidence to support the verdict. *Smith v. Biscayne Park Estates,* 42 So.2d 442 (Fla. 1949); *Brevard County v. Apel,* 246 So.2d 134 (Fla. 4th DCA 1974). At present, apart from his consideration of the "wild" lease, there was ample, proper evidence before Judge Goldstein to support his finding that appellants had transferred their ownership interest in Stella and Paul's Inc. to Boothe. In this regard, appellant, Paul Demosthanes, testified on cross examination as follows:

"Q . . . Do you agree . . . that you made an agreement under which Mr. Boothe purchased the Stella and Paul Inc. restaurant business from you.

A. Yes, to buy my restaurant.

Q. Did you consider that restaurant business to be owned by Mr. Boothe.

A. Yes, sir.''

This testimony was merely cumulative of certain admission made by appellants in their cross claim against Boothe. It has been held that where evidence is erroneously admitted to prove a fact that is conceded or admitted to be true at trial, the error in admitting improper evidence to prove such conceded fact is harmless. *Boykin v. State,* 40 Fla. 484, 24 So. 141 (1898); *Parker v. Perfection Cooperative Airies,* 102 So.2d 645 (Fla. 2d DCA 1958); *Braxton v. McBride,* 241 So.2d 716 (Fla. 1st DCA 1970).

We further rule that appellants have waived any error (a) by not objecting to the admission of the ''wild'' lease into evidence and (b) not affirmatively seeking a mistrial when that option was suggested by the trial court. See *Smith v. State,* Case No. 81-1026 (Fla. 3rd DCA April 20, 1982). We note that the trial court could have reopened the case so as to receive the lease under which rent was sought in the complaint ''was already in the court file and copies had been attached to the complaint.'' *Midland Guardian Company v. Hagin,* 370 So.2d 25 (Fla. 2d DCA 1979); *Akins v. Taylor,* 314 so.2d 13 (Fla. 1st DCA 1975).

Throughout the trial, defense counsel seemed to concede that appellants would have been liable for rents under the lease of October 10, 1977—at least up through April of 1977—had the premises not been rendered untenanable. In this regard, defense counsel and the trial court engaged in the following colloquy:

THE COURT: Could I hold the tenant responsible up to the time of your letter (April 15, 1981)?

MR. FEUER: That is my contention, if you go by the lease literally.

At trial appellant Paul Demosthanes conceded that he had entered into a lease with appellee.[7] Moreover, in their motion for summary judgment,

---

[7]At an earlier hearing before Judge Swanko on April 29, 1981, defense counsel engaged in the following colloquy with Arthur Newman, an attorney, who was then representing appellee:

MR. NEWMAN: Are there any affidavits in there? Are there any leases submitted by the defendant contrary to the leases I submitted?

MR. FEUER: We are going to live with that lease and assignment. Those documents in there are the actual documents in question and we don't have any objection to those documents.

appellants made reference to the lease of October 10, 1977, suggesting that they would be liable for rents thereunder were the lease not cancelled due to the untenanability of the premises. Thus, the argument of appellants that they could not be liable for rents under the lease of October 10, 1977 because same was not admitted into evidence must fail. We hold that appellants will not be permitted to alter the position of their previous pleadings, admissions or testimony (See *Inman v. Club on Sailboat Key,* 342 So.2d 1069 (Fla. 3rd DCA 1977) so as to defeat liability for rents under that lease.

As heretofore mentioned, not only did the pleadings admit the existence of the lease but the parties, at trial, *stipulated* to the existence of the lease. "This established a legal basis for consideration of the lease." *Gunn Plumbing Inc. v. Dania Bank,* 252 So.2d 1 (Fla. 1971); *Rodriguez v. Gonzaga,* 387 So.2d 1054 (Fla. 5th DCA 1980). Any error in the admission of the "wild" lease thus would at most be harmless in light of such stipulation and appellants' failure to objection to the admission of the "wild" lease into evidence. It is axiomatic that the admission of evidence will not be reviewed where no objection is made below to its admission. *McSwain v. Howell,* 29 Fla. 248, 10 So. 588 (1892); *Marks v. DelCastillo,* 386 So.2d 1259 (Fla. 3rd DCA 1980). The parties' stipulation is a further basis to render any non-reversible, especially since both parties acted as if the lease was admitted into evidence and acknowledged the existence of same. See *Rodriguez v. Gonzaga, supra.* Therefore, this court holds that any error in not admitting the correct lease into evidence was harmless and was waived by appellants.[8]

SALMON, J. dissents

Although I agree with the reasoning of the majority opinion, I must dissent because I cannot determine how the amount of the judgment was calculated.

The provision of the lease set forth in footnote 4 of the majority opinion provides that if the lease is cancelled pursuant to its provisions "rent shall be paid only to the date of such fire or casualty." The judgment awarded damages for unpaid rent for the months of January through April, 1982. Footnote 5 shows that the lease was "cancelled" in April, 1981. The cause of the cancellation occurred, however, much earlier, and the rent was to be paid only to the date of fire and casualty, not to the date of cancellation.

I would relinquish jurisdiction to the County Court to explain its method of arriving at the amount of its judgment.

---

[8]For the reasons discussed above, we find appellants' challenge to the court's award of attorneys fees to appellee to be devoid of merit.