373 So.2d 886 (1979)
Betty Raye WELFARE et al., Petitioners,
v.
SEABOARD COAST LINE RAILROAD COMPANY, etc., Respondent.
No. 52847.
Supreme Court of Florida.
May 10, 1979.
Rehearing Denied August 30, 1979.
*887 Robert Orseck, Walter H. Beckham, Jr., and Joel D. Eaton of Podhurst, Orseck & Parks, Miami, and Chandler, O'Neal, Gray, Lang & Haswell, Gainesville, for petitioners.
William R. Swain of Webb, Swain & Watson, Jacksonville, for respondent.
R.J. Beckham of Beckham, McAliley & Proenza, Jacksonville, for Jacksonville Trial Lawyers Association, amicus curiae.
DuBose Ausley and William M. Smith, of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for Florida Railroad Association, amicus curiae.
Bill Wagner of Wagner, Cunningham, Vaughan, Hapner & Genders, Tampa, for Academy of Florida Trial Lawyers, amicus curiae.
PER CURIAM.
This is another of the perplexing cases regarding the proximate cause of a railroad crossing accident. We exercise our jurisdiction under article V, section 3(b)(3), Florida Constitution, and quash the district court opinion.[*]
The facts as set forth by the district court in Seaboard Coast Line Railroad v. Welfare, 350 So.2d 476, 477 (Fla. 1st DCA 1977), are as follows:
The following facts are undisputed. The collision occurred at approximately 12:00 noon on May 25, 1972, during clear, dry weather at the crossing of Walker Street and appellant's main line tracks *888 within the city limits of Live Oak, Florida. Betty and two of her teen-age girl friends, Cathy Parker and Gwynth Frier, left school in an automobile driven by Betty to go to lunch. They drove north on South Walker Street to its intersection with U.S. Highway 90 where they stopped at a stop sign. From that intersection which was approximately 150 feet due south of the railroad crossing where the accident occurred Betty drove the car northward on Walker Street toward the crossing at 25 m.p.h. All windows of the car were up and the air conditioning and radio were both on inside the car. The radio was on normal volume. As the car approached the crossing, the line of sight was partially obstructed by a U.S. Mail Truck which was parked about 50 feet south of the crossing in the northbound lane on the east side of Walker Street. Betty drove the automobile up to and around the mail truck and moving at a steady pace without looking to the right or the left, she drove onto Seaboard's main line tracks in front of appellant's oncoming freight train. She was not driving in a reckless manner otherwise. She and Gwynth Frier were seriously injured and Cathy Parker was killed in the resulting collision. Betty knew the crossing was there and had been over it hundreds of times before. The driver of another car, Katherine Fielding, had already stopped for appellant's train in the southbound lane of Walker Street on the opposite side of the crossing, and she blew her horn frantically in an attempt to get the attention of Betty but she did not respond.
Appellant's train consisting of five diesel engines and 138 cars was making a scheduled freight run from Bainbridge, Georgia, to Jacksonville, Florida, when the collision occurred. When the lead engine reached the whistle post for the Walker Street crossing, approximately 1500 feet west of the crossing, the engineer blew the whistle and blew it again at the crossing where the accident occurred. The crossing was equipped with a standard crossbuck warning sign for automobiles. The speed limit for a train at this crossing was 25 m.p.h. The train had a broken speedometer and was traveling at a speed of approximately 50 m.p.h.
Resolution of the issues in this case depends upon our review of three rulings made by the trial judge which were reversed by the district court. The issues are: (1) whether the trial judge erred in finding that evidence of excessive speed of the train presented a jury question on the issue of proximate cause; (2) whether the trial judge erred in admitting the negative testimony of witnesses on the issue of the adequacy of the train's warning signals; and (3) whether the trial judge erred in admitting expert testimony relating to the adequacy of the train's warning signals.
We find no error in the trial judge's ruling that evidence of excessive speed of the train presented a jury question on the issue of proximate cause. As to the negative testimony of witnesses on the adequacy of warning devices, we reiterate our holding in Tyus v. Apalachicola Northern Railroad, 130 So.2d 580 (Fla. 1961), that:
The gist of our rule in relation to negative testimony in the face of positive testimony to the contrary is that if a jury decides that the attention of the witness whose testimony is negative in character, is actually directed to the fact or situation, about which he later testifies, regardless of the reason therefor, said jury may consider such negative testimony and accord to it the weight it may deem proper.
Id. at 585 (emphasis in original).
As to whether evidence of excessive speed presented a jury question on proximate cause, we cite as controlling our recent case of Helman v. Seaboard Coast Line Railroad, 349 So.2d 1187 (Fla. 1977), and our directions to the appellate courts of this state stated therein:
We initiate this analysis by articulating three incontrovertible premises of law which are relevant to our disposition of this case. First, it is not the function of *889 an appellate court to reevaluate the evidence and substitute its judgment for that of the jury... . Second, if there is any competent evidence to support a verdict, that verdict must be sustained regardless of the District Court's opinion as to its appropriateness... Finally, the question of whether defendant's negligence was the proximate cause of the injury is generally one for the jury unless reasonable men could not differ in their determination of that question... [Citations omitted.]
... Because there was some competent evidence to support the jury verdict that respondents were negligent in traveling at an excessive speed and in failing to sound their whistle when required, the jury was concomitantly imbued with the function of deciding whether such negligence was a proximate cause of the injury.
Id. at 1189-90.
The district court held that the trial judge erred in admitting into evidence the opinion of a human factors expert because the hypothetical question propounded to him included an assumption based on the negative testimony discussed above. Since we find no error in the admission of this negative testimony, we find the expert's opinion admissible and not an invasion of the province of the jury.
Accordingly, the opinion of the district court reported at 350 So.2d 476 is quashed.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD and HATCHETT, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion.
ALDERMAN, Justice, concurring in part, dissenting in part:
I agree that the evidence of the train's excessive speed presented a jury question on the issue of proximate cause and that the trial court properly admitted the negative testimony of those witnesses who did not hear the train's warning signals; however, I disagree with the majority's holding that the opinion of a "human factors" expert was properly admitted into evidence under the facts of this case.
From my review of the record, it appears that there were no unusual circumstances that would justify admission of the testimony of plaintiff's human factors expert. The collision occurred at approximately 12:00 noon during clear weather with no obstructions on the railroad's right-of-way to inhibit drivers from seeing oncoming trains. The only "unusual circumstances" present were directly related to Miss Welfare herself: She never sped up or slowed down prior to driving into the crossing, she never looked to the left or to the right before entering the crossing to see if a train was coming, and she ignored a warning given by another motorist who was waiting on the other side of the crossing and who blew her horn when she saw that Welfare was going to enter the crossing in front of the oncoming train.
This case is distinguishable from Public Health Foundation v. Cole, 352 So.2d 877 (Fla. 4th DCA 1977), cert. denied, 361 So.2d 834 (Fla. 1978), in which the court allowed the testimony of a psychologist concerning human reactions to unusual conditions at the time of a swimming accident. The opinion testimony in Cole related to the deceptive quality of various factors that were present in the environment and the manner in which a person would react to these factors. The weather conditions, the tide, the angle of the sun, the glare, and other physical conditions in existence at the time Mrs. Cole dove into the water and was injured created a situation beyond the ordinary experience and understanding of the jury. Likewise, in Seaboard Coast Line Railroad Co. v. Hill, 250 So.2d 311 (Fla. 4th DCA 1971), writ discharged, 270 So.2d 359 (Fla. 1972), the court allowed the testimony of a psychologist on the human factors involved in a railroad crossing accident where there was a standing train in the darkness and fog, the absence of flares and sound, and a boxcar partially blocking the lights north of the crossing. A different result was reached in Seaboard Coast Line Railroad *890 Co. v. Kubalski, 323 So.2d 32 (Fla. 4th DCA 1975), which involved opinion testimony of a "safety consultant" as to how an average man in a similar railroad crossing situation would react. In Kubalski, there were no unusual circumstances to warrant any inroads upon the province of the jury to decide what a reasonable man should do and would do in that situation.
In the absence of special circumstances that require expertise beyond the scope of the common knowledge of the jurors, I conclude that the trial court abused its discretion in allowing the testimony of the human factors expert, and I would remand this case with instruction that a new trial be granted.
NOTES
[*] In its main opinion in Seaboard Coast Line R.R. v. Welfare, 350 So.2d 476 (Fla. 1st DCA 1977), the court cited a case that was later overruled by this court. On rehearing, the district court considered our opinion in Helman v. Seaboard Coast Line R.R., 349 So.2d 1187 (Fla. 1977), and found that the issues were not identical in the two cases. We disagree and find the cases in conflict.