Margaret SCOTT, Appellee,

v.

SEARS, ROEBUCK & COMPANY, Appellant.

No. 84–2086.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 7, 1985.

Decided May 1, 1986.

William H. Lindsey (Robert E. Glenn, Glenn, Flippin, Feldmann & Darby, Roanoke, Va., on brief), for appellant.

W. Charles Waddell, III (Gentry, Locke, Rakes & Moore, Roanoke, Va., on brief), for appellee.

Before WIDENER and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

This is a slip and fall case in the diversity jurisdiction. The question before us is whether the district court abused its discretion when, over the defendant's objection, it admitted the testimony of an expert in "ergonomics", *i.e.*, a "human factors" expert.

We conclude that some of the admitted expert testimony was unduly prejudicial, and reverse.

### I.

Margaret Scott, with visiting friends, went to the Sears store in Roanoke, Virginia to pick up a rug she had ordered. They entered the store through a special parcel post entrance. After picking up the rug, carried by the two men in the group, they left by the same entrance. In order to reach their parked car, however, they inexplicably turned to their left, opposite the direction from which they had approached the parcel post entrance.

The parcel post entrance opens upon a sidewalk running to the right and to the left. The curb is painted yellow and, in the direction in which Ms. Scott walked, a series of metal grates is set in the concrete. The first and second of those grates end approximately four feet from the yellow curb, and the third ends approximately three feet from the curb. On the day of Ms. Scott's visit, the concrete in the vicinity of the third grate was deteriorated, and the surface was spalling. At the third expansion joint near the third grate, the curb had subsided some three inches below the surface of the walkway and the adjacent curbing. It had been in that condition fifteen years or more. When approached from the parcel post entrance, the subsided curb was more distant than the undisplaced curbing.

Ms. Scott walked diagonally across the sidewalk, avoiding the grates, apparently intending to step off the sidewalk at the third expansion joint. It was broad daylight, and Ms. Scott was in good health and possessed of all her faculties. Nevertheless, one of her one-inch heels caught in the space left by the displaced curb at the third expansion joint.

She fell and broke her leg.

### II.

Virginia law places a significant duty of care upon persons using sidewalks open to the public. The pedestrian must be aware of the "irregularities in grade, unevenness in surface [and] sharp depressions" frequently present in public walkways. *West v. City of Portsmouth*, 232 S.E.2d 763, 766 (Va.1977), *quoting Staunton v. Kerr*, 160 Va. 420, 168 S.E. 326, 328 (1933). If the defect is open and obvious, an injured pedestrian may not recover unless he can prove that external conditions prevented his seeing the defect or would excuse his failure to see it. *Town of Hillsville v.*

*Nester,* 215 Va. 4, 205 S.E.2d 398, 399 (1974). Failure to observe would be excused only by a distraction that was unexpected and substantially beyond the miscellany of activity normally found on public sidewalks. *City of Portsmouth,* 232 S.E.2d at 765–66.

### III.

In an attempt to avoid the defense of contributory negligence, Ms. Scott offered the testimony of Dr. Snydor, a professor at Virginia Polytechnic Institute and an expert in "human factors." Through him she undertook to prove that the defect, though open, was not obvious. He expressed the opinion that the physical environment and the limitations of human perception were such that "a substantial proportion of people [would] not see the three inch drop of the curb when approaching the area from the direction of the parcel post entrance." He stated that as Ms. Scott approached the area, the undamaged curb would obscure the drop off, though we may observe that this would not necessarily be true as one approached the area closely. Moreover, he testified that the human eye has a tendency to "fill in any slight discontinuity or break," and that the yellow paint on the curb would trick the eye into seeing the curb "as the person would typically expect it to be." He testified that most people, particularly women wearing heels, do not like to walk on gratings and that the fact that the third grating was closer to the curb than the first two would cause most pedestrians to veer to the right near the curb. Finally, and of greater moment, he testified that the spalling on the sidewalk would draw and hold the attention of a pedestrian.

Dr. Snydor concluded by expressing the opinion that, in light of Ms. Scott's unfamiliarity with the sidewalk, the conditions he had described created "an accident waiting to happen ... waiting for a woman in particular with a heel to come along, to see [the sidewalk] for the first time from that direction and to simply be involved with looking at the other things in the immedi-

ate environment and unfortunately stepping at the wrong place at the wrong time."

The jury returned a verdict in plaintiff's favor of $125,000.

### IV.

Sears contends that "human factors" expert testimony is inadmissible in the courts of Virginia and that without such testimony it would be entitled to judgment as a matter of law. It argues that the testimony should have been excluded in a federal court sitting in the diversity jurisdiction and applying Virginia law in order to prevent an "end run" around the substantive law of Virginia.

██ It is not clear to us that this kind of expert testimony is completely inadmissible in Virginia's courts, but we need not resolve that question. Unlike evidentiary rules concerning burdens of proof or presumptions, the admissibility of expert testimony in a federal court sitting in the diversity jurisdiction is controlled by federal law. State law, whatever it may be, is irrelevant. *See Krizak v. W.C. Brooks & Sons, Inc.,* 320 F.2d 37, 41 (4th Cir.1963); C. Wright, *Law of Federal Courts* 622 (1983).

### V.

Sears contends that the testimony of "human factors" experts should always be rejected because it deals with probable human reaction to environmental conditions. This is so, it is contended, because such testimony concerns matters within the "common knowledge" of jurors. However, there simply is no support for a rule of *per se* inadmissibility on that account.

The courts of Florida have developed a rule that human factors expert testimony may come in only when there are unusual circumstances making it unlikely that the jury's common experience will enable it to resolve the factual issues. *See Buchman v. Seaboard Coast Line Railroad Co.,* 381 So.2d 229 (Fla.1980); *Welfare v. Seaboard Coast Line Railroad Co.,* 373 So.2d 886

(Fla.1979); *Public Health Foundation v. Cole,* 352 So.2d 877 (Fla.Dist.Ct.App.1977); *Seaboard Coast Line Railroad Co. v. Kubalski,* 323 So.2d 32 (Fla.Dist.Ct.App.1975); *Seaboard Coast Line Railroad Co. v. Hill,* 250 So.2d 311 (Fla.Dist.Ct.App.1971).

The federal courts which have passed on the admissibility of this sort of testimony have avoided the restrictiveness of the Florida rule and have turned instead to Fed.R.Evid. 702. *See Collins v. Seaboard Coast Line Railroad Co.,* 675 F.2d 1185, 1194–95 (11th Cir.1982); *Garwood v. International Paper Co.,* 666 F.2d 217, 223 (5th Cir.1982). Rule 702 provides that expert testimony may be admitted if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." The question whether such assistance will be provided is within the sound discretion of the district judge. *United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 323–24 (4th Cir.1982); *Krizak,* 320 F.2d at 42 (4th Cir.1963).

█ Though we would normally defer to the exercise by the district court of its judgment, Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance. At the same time, the admission of such testimony, though technical error, will almost invariably be harmless. *See United States v. Brown,* 501 F.2d 146, 148–50 (9th Cir.1974). Conversely, so long as the jury, by virtue of common experience, is capable of resolving a factual issue, it will not be prevented from doing so because of the absence of expert testimony. *See Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962).

Trouble is encountered only when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense. *See, e.g., Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 510 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977); *United States v. Collins,* 395 F.Supp. 629, 637 (M.D.Pa.), *aff'd mem.,* 523

F.2d 1051 (3d Cir.1975). This, however, does not seem to be an inquiry under Rule 702, but rather a necessary, independent inquiry under Rule 403 to exclude evidence which is prejudicial. *See, e.g., United States v. Downing,* 753 F.2d 1224, 1242–43 (3d Cir.1985); *Portsmouth Paving,* 694 F.2d at 324; 3 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 702[02] at 702–12.

### VI.

█ Dr. Snydor's testimony that the higher, nearer section of the curb hid the displaced, further section from the sight of one outside the parcel post door could have been of scant help to the jury. The jurors had an opportunity to observe that for themselves when taken to the scene, and they could see it in the photographs which were in evidence. The statistical evidence introduced through Dr. Snydor that persons wearing heels tend to avoid walking on grates was of no greater help. As to both matters, the witness was simply repeating what is common knowledge and common sense. That would lead to the conclusion that the admission of such testimony was erroneous under Rule 702, but the error was clearly harmless.

█ On the other hand, Dr. Snydor's testimony that the yellow color of the curb might prompt the human eye to fill in discontinuities is not a matter within the common knowledge of jurors. This would seem to be a paradigm of admissible human factors testimony. It professed to be a statement of scientific understanding of the effect of color upon human perception under some circumstances.

There was no abuse of discretion in the admission of that testimony.

█ It was error, however, to have permitted Dr. Snydor's testimony that the spalling of the concrete was an effective distraction or to comment that the scene was an "accident waiting to happen." Under Virginia law, the spalling of the concrete would not excuse the plaintiff's failure to see the defect in the curbing. The jury, however, was not told that it could

not use the spalling as a basis for finding Ms. Scott reasonably distracted and therefore innocent of contributory negligence. In the absence of instructions clearly requiring the jury to disregard Dr. Snydor's testimony about the spalling, its admission was prejudicial error.

Similarly, Dr. Snydor's comment that the defect was an "accident waiting to happen" was overly prejudicial and inflammatory. It should have been excluded.

Since prejudicial testimony was admitted in violation of Rule 403, there must be a new trial.

REVERSED AND REMANDED.