959 F.2d 231
 35 Fed. R. Evid. Serv. 938
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jeanette R. CHRETIEN, A minor and incompetent, by and
through her legal guardians; Dollard V. CHRETIEN;
Mildred Chretien, Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION, A Delaware Corporation,
Defendant-Appellee.
v.
Jeanette R. CHRETIEN, A minor and incompetent, by and
through her legal guardians; Dollard V. CHRETIEN;
Mildred Chretien, Plaintiffs-Appellees,
GENERAL MOTORS CORPORATION, A Delaware Corporation,
Defendant-Appellant.
 Nos. 90-2090, 90-2110.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 10, 1991
Decided: April 6, 1992
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Newport News. Robert G. Doumar, District Judge. (CA-89-70-NN)
 Argued: Larry E. Coben, Litvin, Blumberg, Matusow & Young, Philadelphia, for Appellants.
 John Charles Thomas, Hunton & Williams, Richmond, for Appellee.
 On Brief: Robert R. Long, Robert E. Long, Ltd., Hampton, for Appellants.
 James E. Farnham, Sharon Maitland Moon, Hunton & Williams, Richmond, for Appellee.
 E.D.Va.
 AFFIRMED
 Before DONALD RUSSELL and WILKINSON, Circuit Judges, and ELIZABETH V.HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Jeanette Chretien ("Chretien") appealed from a jury verdict in favor of Defendant General Motors Corporation ("GM") in her personal injury/products liability action. General Motors noted a cross-appeal. We affirm the jury verdict.
 
 
 2
 In February 1984, Chretien was a passenger in a 1981 Chevrolet Camaro that was struck by another car. She suffered catastrophic brain damage as a result of the accident and will require custodial care for the rest of her life. Appellants sought to establish at trial that Chretien struck her head on the hard inside surface of the Camaro and on a coat hook affixed to the inside surface, and sought damages from GM on theories of negligent design and implied warranty of merchantability.
 
 
 3
 Chretien raises numerous issues in regard to various evidentiary rulings which she alleges were error and evidenced the trial judge's bias against her. Chretien first alleges that the court improperly denied her pre-trial motion "to compel GM to produce test and internal corporate records about GM's efforts before 1981 to design and test production and so-called experimental vehicles to improve head protection in the event of a side impact." The order denied Chretien's requests for results of testing on GM cars other than the Camaro, for information from experiments with an Experimental Safety Vehicle, for information on development of a crash test dummy, and for information about post-1981 Camaros. Her requests for production of other information were granted.
 
 
 4
 The district court has wide latitude in controlling discovery, and its rulings will be overturned only upon proof of a clear abuse of discretion. Ardrey v. United Parcel Serv., 798 F.2d 679, 682 (4th Cir. 1986), cert. denied, 480 U.S. 934 (1987). Though it is unusual to find an abuse of discretion in discovery matters, the district court may not prevent a plaintiff from pursuing a theory or cause of action through discovery restrictions. Id. The district court's ruling on Chretien's pre-trial discovery motion was not an abuse of discretion because it did not prevent her from presenting her claims in regard to the 1981 Camaro.
 
 
 5
 Chretien next complains that she was deprived of a fair trial because the trial judge intervened in her questioning of witnesses. Mere intervention by a trial judge does not, without more, deny due process. See United States v. Parodi, 703 F.2d 768, 775 (4th Cir. 1983) (questioning of defense witnesses); United States v. Head, 697 F.2d 1200, 1210 (4th Cir. 1982) (although trial judge intervened excessively, he directed negative remarks at both sides), cert. denied, 462 U.S. 1132 (1983). Objections to the interrogation of witnesses by the court may be made at the time of the interrogation or at the next available opportunity when the jury is not present. Fed. R. Evid. 614(c). "If a party fails to object to the court's interrogation of a witness at trial, his objection will not be reviewed on appeal." Stillman v. Norfolk & W. Ry., 811 F.2d 834, 839 (4th Cir. 1987).
 
 
 6
 Although Chretien's counsel never objected at trial to the court's comments and questions of the witnesses, Chretien argues that appellate review should be permitted nonetheless because the judge's comments were so egregious that she was denied a fair trial. We conclude otherwise. Our review of the record discloses that the court's intervention was not of such a character as to merit appellate review without proper objection. See id. (quoting Miley v. Delta Marine Drilling Co., 473 F.2d 856, 857-58 (5th Cir.), cert. denied, 414 U.S. 871 (1973)).
 
 
 7
 Chretien next argues that the district court improperly limited or excluded expert testimony. She asserts that the district court violated Fed. R. Evid. 703 when it instructed the jury to disregard portions of testimony from an accident reconstruction expert. Fed. R. Evid. 703 states,
 
 
 8
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
 
 
 9
 The advisory notes to the rule state that facts or data upon which expert opinions are based may be derived from three sources: "firsthand observation" of witnesses, "presentation at the trial," and presentation of data to the expert "outside of court and other than by his own perception." Fed. R. Evid. 703 advisory committee's note. While Rule 703 permits the introduction of facts and data relied upon by the expert if the data meets the "reasonably relied upon" test, it "does not compel the admission of any evidence desired by a litigant simply because that otherwise inadmissible evidence can be styled by one expert witness as something he relied upon in reaching his opinion." United States v. Mest, 789 F.2d 1069, 1074 (4th Cir.), cert. denied, 479 U.S. 846 (1986). Limitation of an expert's speculative testimony as to the cause of an accident to hypotheses consistent with material facts supported by the evidence before the jury is proper. Cunningham v. Rendezvous, Inc., 699 F.2d 676, 678 (4th Cir. 1983).
 
 
 10
 Expert testimony is admissible if the expert's knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "The question whether such assistance will be provided is within the sound discretion of the district judge," and this Court normally defers to the district court's judgment. Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986).
 
 
 11
 The expert in question here, Steven Syson, a former General Motors engineer, based his testimony on a computer program which supplied information after he input various data concerning the accident, such as the speeds of the two vehicles, the impact points on the road, the amount of braking, and the angles of the vehicles. Through what he called an "iterative process," the expert would vary the data he input into the computer to render him a known result, such as the final resting place of the vehicles. The district court noted that there was little physical evidence of the circumstances surrounding the accident, which occurred over five years prior to trial. There were no skid mark measurements, and no evidence of the weight of the vehicles, or the condition of the road. The district court instructed the jury that they should disregard testimony from Syson"in relation to what may have happened in the accident" because the court found that the testimony was "so speculative as to not be worthy of consideration by [the jury]." We find that the court did not abuse its discretion in so instructing the jury.
 
 
 12
 Syson's testimony on design and testing of the Camaro was wideranging. However, in this area, the district court limited him to giving his expert opinion about what a reasonable and prudent automobile manufacturer would have done in 1974 when the Camaro design was modified by placing the coat hook where it was in the 1981 model in which Chretien was a passenger, not how the car could have been designed had safety been the only consideration. His opinions on the negligence of the 1974 design were also limited to design of the car as a whole, rather than being addressed only on the side panel and coat hook area of the car. These limitations served to focus the testimony on matters relevant to the issues before the jury. The court also refused to allow Chretien's experts to give opinion testimony predicated on previous opinion testimony given by other experts.
 
 
 13
 Chretien complains that the trial court improperly limited the testimony of two expert witnesses because the court found that their trial testimony varied from their deposition testimony. First, Chretien asserts that the court erred in not permitting another mechanical engineer, Dr. Kaplan, to testify that a coat hook should have been removed from the design of the back panel of the car because he did not state that opinion in his pretrial deposition. The court found that the mechanical engineer testified in his deposition only on the "design and location of the coat hook," not about the absence of a coat hook in the car's design. Chretien did not respond to the court's requests that he indicate where in the deposition the engineer testified about elimination of the coat hook.
 
 
 14
 Chretien continues that the court improperly prevented a neurosurgeon, Dr. Ommaya, from offering his opinion that Chretien's injuries would not have occurred at all had the coat hook been removed and the adjacent back seat panel padded. The doctor stated in his deposition that if the coat hook were not located on the side panel and if there were more padding on the panel, the probability of severe injury would have been less. He could not quantify how much the severity of injury would have been reduced. The court permitted the doctor to testify to the effect of removing the coat hook and the effect of padding.
 
 
 15
 Admissibility of expert testimony is within the sound discretion of the trial judge. Scott, 789 F.2d at 1055. We hold that the district court did not abuse its discretion in concluding that the testimony in question differed significantly from the pretrial deposition testimony and that the experts should be limited to their deposition statements.
 
 
 16
 Chretien continues that the court erred in other evidentiary rulings. She argues that the court improperly admitted prejudicial evidence that there was a case of beer in the Camaro trunk and that Chretien was not wearing a seat belt. There was no evidence of intoxication; the case of beer was nearly full.
 
 
 17
 It is within the trial court's discretion to balance the probative value of a piece of evidence against "the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; see Ellis v. International Playtex, Inc., 745 F.2d 292, 304 (4th Cir. 1984). The Defendant argues that the testimony concerning the case of beer is relevant to the witness's ability to recall and to the weight of the vehicle for purposes of accident reconstruction. Chretien's accident reconstruction expert stated on cross-examination that he needed "to know the total weight of the vehicle within roughly five percent." Since there was never any allegation that Chretien had been drinking and since the evidence of the case of beer was probative of other factors related to the accident, we hold that the district court did not abuse its discretion in admitting such evidence.
 
 
 18
 Chretien next argues that the district court erred in admitting testimony that she was not wearing her seat belt. In Virginia, occupants of the front seats of motor vehicles are required to wear safety belts. Va. Code Ann. § 46.2-1094 (Michie 1989). Section E of the statute also provides:
 
 
 19
 A violation of this section shall not constitute negligence, be considered in mitigation of damages of whatever nature, be admissible in evidence or be the subject of comment by counsel in any action for the recovery of damages arising out of the operation, ownership, or maintenance of a motor vehicle, nor shall anything in this section change any existing law, rule, or procedure pertaining to any such civil action.
 
 
 20
 Prior to the amendment of the Virginia statute, evidence of plaintiff's nonuse of a safety belt was not submitted "unless and until the defendant can demonstrate, by competent and satisfactory evidence, the extent that plaintiff's injuries could have been avoided by wearing a seat belt." Wilson v. Volkswagen of Am., 445 F. Supp. 1368, 1373 (E.D. Va. 1978). Although GM argues in this appeal that, had Chretien been strapped into the vehicle, she would have"dipped down" when the side of the Camaro dipped down and thus avoided striking her head on the coat hook, no evidence supporting such a theory was offered at trial or in depositions. In a deposition, Chretien's neurosurgeon expert responded in the affirmative to the defense's leading question, "Would it be fair to say, based on what you have testified thus far, that if her wearing the seat belt had prevented her from striking the coat hook, that would have reduced the injury that she sustained in the accident?" (Emphasis Added).
 
 
 21
 The defense's question was posed as a hypothetical. There was no evidence presented that supported a theory that Chretien's injury would have actually been prevented had she been wearing a seat belt. The only trial testimony concerning the seat belt issue was ambiguous at best. The other backseat passenger of the car stated that he was not wearing his seat belt, but he could not remember if Chretien was wearing hers. No other occupants of the Camaro testified. Even though Chretien was not in the front seat of the car, the underlying intent of Va. Code § 46.2-1094(E) of preventing the admission of evidence that is more prejudicial than probative is still applicable. However, even if the district court's admission of evidence that Chretien was not wearing a seat belt might be error under Virginia law, no such affirmative evidence was entered at trial. Chretien's neurosurgeon expert stated in his deposition that he "gathered" that Chretien was not wearing a seat belt, but did not so testify before the jury.
 
 
 22
 Chretien argues that the trial court erred when it prevented her from introducing a 1972 report concerning a GM Experimental Safety Vehicle. Chretien alleged that the report contained information concerning the design of an "A pillar" to provide head protection. Chretien equated the sail panel in the Camaro to the pillar because they both serve the same function. The court refused to admit the report as an "abstract exhibit," but commented that it might be used "under the proper circumstances." Though Chretien never raised the issue again at trial, she asserts on appeal that the evidence was admissible as evidence of automotive "state-of-the-art safety." During discussion of the report, the trial court stated, "Now, you may at some point develop this, or you may be able to use it in some fashion. I am not outlawing its use in some fashion. I am outlawing it as an abstract exhibit at this time, and I want to make that distinction clear so you understand." The court continued, "I am not saying that under the proper circumstances it might not be used, and I wanted to make that clear. This is not the proper circumstances." Since Chretien never again sought admission of the report into evidence after establishing the proper foundation, she has waived this issue on appeal.
 
 
 23
 Chretien next argues that the trial court prevented her mechanical engineer expert from testifying about GM's allegedly"negligent testing practices." The mechanical engineer testified, however, that a "reasonably prudent manufacturer" should "evaluate how the change in design affects the safety performance," and that GM never performed such testing on the sail panel for the Camaro during the time when the coat hook was relocated on the sail panel. Therefore, since the expert, in fact, addressed this issue, this claim has no merit.
 
 
 24
 Chretien complains that the trial court committed clear error when it prevented Chretien's mechanical engineer expert from giving his opinion as to the design performance criteria which he believed a reasonably prudent manufacturer should have used in designing the rear portion of the car. The expert himself testified that there was no "construction standard" in regard to the sail panel or placement of the coat hook. The expert also testified on how "a reasonably prudent manufacturer" would have designed this particular panel and where he would have placed the coat hook. Therefore, this allegation is also meritless.
 
 
 25
 Chretien next contends that the trial court erred when it would not permit counsel to refresh the recollection of the driver of the car that struck the Camaro. Counsel sought to refresh recollection with a transcript of a tape recording dated a year after the accident, in which Chretien's attorney summarized the witness's version of the accident. Although the attorney stated in the summary that the witness was present during the dictation, the transcript was not signed or sworn. The court commented that the document could not be used during the direct examination of the witness unless the attorney withdrew as trial counsel and testified under oath to verify its contents, which he chose not to do.
 
 
 26
 The manner in which counsel may refresh a witness's recollection is largely within the discretion of the trial judge. United States v. Cranson, 453 F.2d 123, 124 (4th Cir. 1971), cert. denied, 406 U.S. 909 (1972). A witness's recollection may be properly refreshed by writings and papers which are not in themselves admissible in evidence, even if the witness himself did not prepare the document. United States v. Landof, 591 F.2d 36, 39 (9th Cir. 1978) (use of FBI report to refresh recollection permitted); 3 John Henry Wigmore, Evidence in Trials at Common Law §§ 758-759 (1970). That the writing is not an original or that it was not made at the time of the event also does not bar use of the document to refresh recollection. Id. §§ 760-761. "Proper foundation for such procedure requires that the witness' recollection be exhausted." United States v. Morlang, 531 F.2d 183, 191 (4th Cir. 1975). The only issues for the court to consider are whether the writing is " 'genuinely calculated to revive the witness' recollection,' and whether the writing is reliable." 3 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence § 612 (1991) (citations omitted). A trial court does not abuse its discretion when it does not permit a witness to review notes for purposes of refreshing recollection where the court finds the notes unreliable. Parliament Ins. Co. v. Hanson, 676 F.2d 1069, 1074 (5th Cir. 1982). The first reference to the document in question occurred when the court asked the witness if he had seen any other exhibits in the case. The witness responded that he had seen "a typed-up conversation that I had sometime maybe within a year after the accident. That's all." The following exchange then occurred between Chretien's counsel and the witness:
 
 
 27
 Q.Did you have a chance while you were at the scene to observe the damage to the Camaro?
 
 
 28
 A.I really-it was spun around in the road, so I really didn't observe it too much. I don't recall.
 
 
 29
 Q.All right.
 
 
 30
 A.Not from that night, no.
 
 
 31
 Q.Did your reference to this typed-up document refresh your recollection of any of the events?
 
 
 32
 The court at first permitted counsel to show the statement to the witness, and counsel asked if the statement refreshed his recollection. After an objection from the defense counsel and further discussion, the court stated:
 
 
 33
 I am not going to rule that you can or cannot use it. I am going to rule that the witness cannot use this statement and testify from it on direct examination, because it isn't signed by him, without more than the bald thing in the statement that it was done in this fashion.
 
 
 34
 The attorney who made the tape was co-counsel at the trial, and the court gave Chretien the option of having the attorney withdraw as counsel and testify to establish the reliability of the documents. However, Chretien chose not to have the attorney testify; the witness testified without the aid of the summary.
 
 
 35
 It was never clearly established that the witness's recollection was exhausted. As the exchange above discloses, the witness testified that he did not observe the damage to the Camaro on the night of the accident. Even if the witness's recollection required refreshment, we conclude that the trial court did not abuse its discretion in determining that the document was unreliable because it was an unwitnessed summary of a conversation, not an actual transcript or recording of a conversation.
 
 
 36
 Chretien's next complaint is that the trial court erred when it would not admit into evidence as a party opponent admission under Fed. R. Evid. 801(d)(2) portions of a memorandum GM prepared for a motion in limine in another, unrelated action involving passengers seated in a front seat. Chretien alleges that GM admits in the memorandum the need to protect automobile occupants by padding the interior. The statement reads:
 
 
 37
 Over a wide range of impact speeds, injuries suffered by occupants are largely determined by how well these structures on the inside of the vehicle cushion the human body. In recognition of these principles, manufacturers provide padded instrument panels, seat backs, armrests, sun visors, "A" pillars, headers and roof rails, among other structures.
 
 
 38
 The district court found that the information in the memorandum was argumentative rather than factual. The court commented that the statement was "not a clear admission" and would only "cause confusion." The court continued that the statement was "too far afield."
 
 
 39
 Under Rule 801(d)(2), a statement is not hearsay if
 
 
 40
 t]he statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspira tor of a party during the course and in furtherance of the conspiracy.
 
 
 41
 Since the statement Chretien sought to enter into evidence was from a completely unrelated proceeding, the district court did not abuse its discretion in declining to admit it into evidence on the ground that it might confuse the jury.
 
 
 42
 Even if the court's refusal to admit the statement was in error, it is unlikely that refusal to admit the statement affected any substantial right. Fed. R. Evid. 103(a). The gist of the statement is that padding interior structures of an automobile reduces occupant injuries-a proposition within the realm of the jury's common knowledge.
 
 
 43
 Chretien also alleges that the court's refusal to accept into evidence requests for admission because they were untimely filed was in error. The court first determined that such requests had to be filed more than thirty days prior to the final pre-trial conference, and then determined that these were not. Chretien does not dispute that determination.
 
 
 44
 The court further found that the request for admission was not contained in the court's file. In addition, the court had previously ruled that the statement from the memorandum in the unrelated case was not admissible as a Rule 801(d)(2) admission. Chretien's requests for admission concerned the same information. Chretien's attorney stated that "we filed a request for admissions in this case to admit the truth of those facts [contained in the memo]." We find that the court did not abuse its discretion in determining that the request was untimely. As with the court's ruling on the memorandum information discussed above, the court's ruling in this instance did not affect a substantial right.
 
 
 45
 Chretien next asserts that she was erroneously prevented from recovering "past or future costs for custodial care, housing costs, or any other non-medical costs." The accident occurred on February 24, 1984. This suit was not filed until April 28, 1989. The court determined that the claim was barred by Virginia's five-year statute of limitations. In Virginia, every action for personal injury "shall be brought within two years after the cause of action accrues." Va. Code Ann. § 8.01-243(A) (Michie 1984 & Supp. 1991). Actions by parents or guardians "for expenses of curing or attempting to cure such infant from the result of a personal injury or loss of services of such infant, shall be brought within five years after the cause of action accrues." Va. Code Ann. § 8.01-243(B) (Michie 1984 & Supp. 1991). Although Chretien asserts that she seeks costs for "custodial care," not medical expenses, the statutory language bars any personal injury claims by Chretien or her parents. Chretien's parents had five years from the date of the accident to file a claim under Va. Codes 8.01-243(B). Any claim by Chretien herself to recover for custodial care would be barred by the Virginia two-year statute of limitations.
 
 
 46
 Chretien turned eighteen on March 24, 1986. If a person entitled to bring a personal injury action becomes of unsound mind, the time during which he is of unsound mind shall not be computed as any part of the period within which the action must be brought, except where a guardian ... is appointed for such person in which case an action may be commenced by such ... guardian before the expiration of the applicable period of limitation or within one year after his qualification as such, whichever occurs later.
 
 
 47
 Va. Code Ann. § 8.01-229(2)(b) (Michie 1984 & Supp. 1991). Chretien's parents as her guardians would thus have had the greater of two time periods within which to file suit: two years from her eighteenth birthday, when she could sue in her own right; or one year from their appointment as guardians. As noted above, Chretien's complaint was filed more than two years after her eighteenth birthday. Her parents were appointed guardians on May 18, 1987, extending the limitations period to May 18, 1988. The April 1989 complaint came after the end of that period. Therefore, the court's decision prohibiting any claims for medical expenses or "custodial care" because the statute of limitations had run was correct.
 
 
 48
 Chretien asserts that the court erred when it struck a claim for loss of earnings based on an actuarial report which calculated Chretien's future income on the assumptions that she would become a housewife, a working woman with a bachelor's degree, or an accountant. The court determined that "she is not entitled to loss of earnings because it would be speculative." There was testimony that Chretien was a good, college-bound student with aspirations of becoming an accountant. She had never worked for money.
 
 
 49
 In Virginia, a plaintiff must prove damages with"reasonable certainty." Gwaltney v. Reed, 84 S.E.2d 501, 502 (Va. 1954). "Estimates of damages based entirely upon statistics and assumptions are too remote and speculative ... [;][i]n order to form a reliable basis for calculation of lost future income or loss of earning capacity, such evidence must be grounded upon facts specific to the individual whose loss is being calculated." Bulala v. Boyd, 389 S.E.2d 670, 677 (Va. 1990). An infant plaintiff, like any other plaintiff, must "furnish evidence of sufficient facts or circumstances" to enable the jury to make "an intelligent and probable estimate" of damages. Gwaltney, 84 S.E.2d at 502. "Such evidence must relate to facts and circumstances personal to the plaintiff as an individual, not merely to his membership in a statistical class." Bulala, 389 S.E.2d at 678. Like the evidence in Bulala, the evidence proffered in this case assumes that Chretien "would have lived a normal life span, would have been motivated to acquire a reasonable education, would have been motivated to acquire necessary work skills, would have been motivated to work all her life, and would have had the opportunity to do so without hindrance by health, economic, or other factors." Id. We conclude that the court did not err in striking the speculative claim of loss of future income.
 
 
 50
 Chretien further asserts that the court erroneously struck the issue of punitive damages from the case. The court determined that it had not heard "a single piece of evidence which indicated any maliciousness, any total disregard of [sic] any willful or wanton misconduct on the part of General Motors." In Virginia, punitive damages are appropriate "where there is misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others." Booth v. Robertson, 374 S.E.2d 1, 2 (Va. 1988) (emphasis omitted) (quoting Baker v. Marcus, 114 S.E.2d 617, 621 (Va. 1960)). As the court noted, Chretien may have presented sufficient evidence for the jury to consider a negligence claim, but there was no evidence that GM's conduct was so willful and wanton to "evince a conscious disregard of the rights of others." Therefore, the court did not err in striking the claim for punitive damages.
 
 
 51
 Chretien asserts that the court committed reversible error in its jury instructions. This Court must review the jury charge as a whole, and a district judge has broad discretion in framing jury instructions. Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1164 (4th Cir. 1986). "If the instructions correctly state the law and adequately cover the issues in the case, the charge is sufficient." Id.
 
 
 52
 Chretien first alleges that the court improperly instructed the jury that she had the burden of proving the injuries she would have suffered if the car were "undefective." It is undisputed that the accident was not caused by a design defect in the Camaro. Chretien proceeded on the theory that, because of a design defect in the padding and the placement of the coat hook in the rear interior of the vehicle, her injury was more severe than it would have been in a better designed Camaro. Experts testified to that effect. They were unable, however, to quantify how much less severe her injuries would have been if the car were differently designed. Chretien had the burden of proving what her injuries would have been with an alternative design so as to establish in some way the extent to which her injuries were due to the allegedly defective design. Stonehocker v. General Motors Corp., 587 F.2d 151, 158 (4th Cir. 1978); see Huddell v. Levin, 537 F.2d 726, 738 (3d Cir. 1976); Dreisonstok v. Volkswagenwerk, A.G., 489 F.2d 1066, 1076 (4th Cir. 1974). Since the jury charge adequately stated the law as it relates to issues in the case, we conclude that the court did not abuse its discretion in using it.
 
 
 53
 Chretien next asserts that the court committed reversible error when it declined to instruct the jury "that customary practice does not prescribe GM's duty of care, and that it can be found liable despite compliance with industry practice." The court correctly found, however, that there had been no proof of standard practice of the automobile industry in this area or whether GM complied with such practice. Since the requested instruction was not adequately supported by the evidence, the court did not err in refusing it.
 
 
 54
 Chretien next asserts that the district court erred when it declined to instruct the jury that GM should be "held to the standard of experts in the design and manufacture of their products," and therefore is "charged with knowing all of the dangerous features of its product." The record discloses that the court properly instructed the jury that the test was "what a reasonably prudent automobile manufacturer would have done under the same or similar circumstances." The court asked the jury to determine whether the Camaro was negligently designed and whether the design enhanced the injuries Chretien suffered in the collision.
 
 
 55
 Whatever specialized knowledge the jury deems a manufacturer should possess is covered by the test of "what a reasonably prudent automobile manufacturer would have done under the same or similar circumstances." The district court therefore did not abuse its discretion in denying Chretien's instruction.
 
 
 56
 GM argues in its cross-appeal that the district court erred in denying its motion for summary judgment on the ground that the "crashworthiness" cause of action does not exist in Virginia. Because we affirm the jury verdict in favor of GM, we decline to address crashworthiness or the other claims of error GM raises in its crossappeal. For the above reasons, we affirm the jury verdict in favor of General Motors.
 
 AFFIRMED