966 F.2d 1443
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Claire Marie MCCARTHY, Plaintiff-Appellant,
v.
Larry J. ABROMAVICH, Defendant-Appellee.
 No. 91-2732.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1992
Decided: June 26, 1992
 
 Argued: Nicholas Gilman, Gilman, Olson & Pangia, Washington, D.C ., for Appellant.
 Robert L. Ferguson, Jr., Thieblot, Ryan, Martin & Ferguson, Baltimore, Maryland, for Appellee.
 On Brief: Jodi K. Ebersole, Thieblot, Ryan, Martin & Ferguson, Baltimore, Maryland, for Appellee.
 Before WILKINSON and HAMILTON, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Claire McCarthy sued defendant-appellee Larry Abromavich for injuries sustained in an airplane crash in a marshy area near Cambridge, Maryland. At the close of plaintiff's case, the district court granted Abromavich's motion for a directed verdict on McCarthy's negligence claims. McCarthy appeals from this adverse judgment. Finding no error, we affirm.
 
 
 2
 * Abromavich and McCarthy flew from Manassas, Virginia, to Ocean City, Maryland, in Abromavich's Piper Turbo Lance II airplane for a weekend fishing trip on June 24, 1988. On June 26, the parties proceeded back to the airport for the return trip. After a brief delay due to inclement weather, Abromavich walked around the airplane for an inspection and once inside the airplane went through a pre-flight checklist located in a black binder. Abromavich started the airplane, taxied down the runway and took off.
 
 
 3
 As the airplane approached the Chesapeake Bay, Abromavich activated the auto-pilot. Shortly thereafter, the airplane's engine went dead and Abromavich attempted to restart the engine. From memory, Abromavich investigated various possible causes, including switching fuel tanks, turning the electric fuel pump on, adjusting the mixture control and checking the engine gauges for an indication of the cause of the engine failure. Abromavich did not, however, perform two procedures recommended in the flight manual. He did not check the alternate air flow or attempt a "hot-start procedure."[1] Ultimately, Abromavich was not successful in getting the engine started.
 
 
 4
 After realizing that he was unable to restart the engine, Abromavich made a 180-degree turn and headed back to land. As the airplane was headed toward land, Abromavich handed McCarthy the black binder and asked her to locate the emergency landing procedures. McCarthy was unable to find them. As the airplane headed down, Abromavich continued his efforts, although unsuccessful, to restart the engine. When power was not restored, he initiated an emergency landing. A marshy clearing surrounded by trees was selected for an emergency landing of the airplane.
 
 
 5
 Abromavich circled the clearing and instituted a"power off" landing. As Abromavich passed over the trees, he inadvertently released the landing gear. Abromavich then tilted the airplane down to gain airspeed, then leveled off the airplane and landed the airplane pulling the flaps up. The airplane rolled approximately 100 feet and the landing gear slowly settled into the mud until the end of the roll-out when the gear, twenty-five inches into the mud, sheared off. After the emergency landing, Abromavich and McCarthy ran from the airplane and were eventually rescued by helicopter.
 
 
 6
 McCarthy brought suit in federal court alleging that the injuries she sustained were due to: (1) Abromavich's negligence in failing to restart the airplane and (2) Abromavich's negligence in landing the aircraft with the flaps up and the landing gear down. At the close of plaintiff's case, the district court granted Abromavich's motion for a directed verdict. As to plaintiff's first allegation of negligence, the district court stated:
 
 
 7
 But there is just no evidence as to what caused it[the engine] to stop. So I'm going to find that as far as-any negligence on the question of what he did trying to get this plane started in mid-air, I don't find any, none whatsoever, and there is no evidence to send to the jury on that because any evidence coming from any expert would be mere conjecture or speculation on what might have happened if something else had happened, and we'd be speculating on what caused the engine first to fail, and second on why it didn't start. And since nobody knows, including the expert, whether or not anything he could have done would have started this engine, to let the jury guess and to say he's neg ligent because he couldn't start an engine that nobody knows what caused it to fail, would-does not amount to sufficient evidence to send the case to the jury.
 
 
 8
 Joint Appendix (J.A.), pp. 11-12.
 
 
 9
 As to plaintiff's second allegation of negligence, the district court noted that Abromavich was confronted with an emergency situation. The district court also noted that the evidence demonstrated that the airplane landed smoothly and rolled to an upright stop, and that plaintiff's expert, Richard Coxey, testified that the airplane landed safely. In her deposition testimony, McCarthy stated that she felt forced forward and a little to the right, like a car stopping very fast, when the plane landed. At trial she stated she felt "jammed" or banged on the ground, though she acknowledged her earlier description of the landing. In light of these observations, the district court concluded that there was no negligence in light of the safe landing and the emergency conditions Abromavich confronted. This appeal followed.
 
 II
 
 10
 Our review of a district court's grant of a directed verdict is limited to determining whether "without weighing the evidence or considering the credibility of the witness, 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.' " Gairola v. Virginia Dep't of Gen. Serv., 753 F.2d 1281, 1285 (4th Cir. 1985) (quoting Wheatley v. Gladden, 660 F.2d 1024, 1027 (4th Cir. 1981)). "The district court is entitled to grant a directed verdict even though some evidence supports the opposite proposition so long as 'there are no controverted issues of fact upon which reasonable minds could differ.' " Kim v. Coppin State College, 662 F.2d 1055, 1059 (4th Cir. 1981) (quoting Proctor v. Colonial Refrigerated Transportation, Inc., 494 F.2d 89, 93 (4th Cir. 1974)). Substantial evidence supporting a verdict for plaintiff must exist for us to disturb the district court's grant of a directed verdict in favor of the defendant. Gairola, 753 F.2d at 1285 (citations omitted). We conclude, without weighing the evidence or assessing the credibility of the witnesses, there is no substantial evidence supporting a verdict for the plaintiff, and thus a reasonable juror could have only found for the defendant.
 
 III
 
 11
 Under Maryland law, a claim of negligence consists of four elements. The plaintiff must establish: (1) the defendant owed a duty to the plaintiff, (2) a breach of that duty by the defendant, (3) a legally cognizable causal relationship between the breach of duty and the harm suffered, and (4) damages suffered by the plaintiff. Jaques v. First National Bank of Maryland, 515 A.2d 756 (Md. 1986).
 
 
 12
 * The plaintiff claims that the defendant was negligent in failing to restart the engine inasmuch as he failed to check the alternate air flow and failed to perform a "hot start procedure." The district court held that there was no evidence as to what caused the failure of the engine; thus, there was no proof that checking the alternate air flow or performing a "hot start procedure" would have started the engine and prevented the accident. Consequently, the district court concluded that McCarthy failed to establish that the harm suffered was the proximate cause of an act or omission on behalf of Abromavich.
 
 
 13
 While it is true that Abromavich could have checked the alternate air flow and attempted a "hot start procedure," the record is devoid of evidence that this would have started the engine. Plaintiff's expert, Richard Coxey, testified that he could not aver that the engine would have started had defendant checked the alternate air flow or performed a "hot start procedure." Thus, the cause of the engine failure remains an unsolved conundrum. Under these circumstances, it was not appropriate to submit this allegation of negligence to the jury. The plaintiff simply failed to establish the cause of the engine failure. Accordingly, we agree with the district court that Abromavich's failure to check the alternate air flow or perform a"hot start procedure" does not amount to a viable negligence cause of action.[2] Plaintiff also argues that the district court abused its discretion when it would not allow plaintiff's expert, Richard Coxey, "to testify that the post-crash restart showed no mechanical malfunction." Appellant's Brief at 16. The district court refused to allow plaintiff's expert to testify as to the significance of the restart and the mechanical adjustments made to the airplane by Dawn Aeronautics and Pamela Kleckner of the National Transportation Safety Board when they restarted the airplane six weeks after the crash. The district court's reason for excluding Coxey's testimony was his lack of knowledge and experience in engine mechanics. "The question of whether expert testimony is admissible is within the sound discretion of the trial judge, and appellate courts normally defer to the trial judge's decision." Persinger v. Norfolk & Western Railway Co., 920 F.2d 1185, 1187 (4th Cir. 1990) (citing Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986)).
 
 
 14
 Fed. R. Evid. 702 governs the admissibility of expert testimony. Rule 702 provides:
 
 
 15
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 16
 "Generally, the test for exclusion is a strict one, and the purported expert must have neither the knowledge, skill, experience, training nor education on the issue for which the opinion is proffered." Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989).
 
 
 17
 Coxey testified at length about his qualifications as a pilot in multiengine and single-engine airplanes with over 10,000 flying hours, 800 of which were in small single-engine airplanes similar to the Piper Turbo Lance II. Coxey was also an aviation accident reconstruction specialist with five years experience investigating general aviation accidents. However, Coxey had never flown or piloted a Piper Turbo Lance II. In addition, Coxey's degree is in aeronautical administration and not aeronautical engineering. Coxey never took any mechanic's courses for the maintenance of airplane engines and is not a certified mechanic or aircraft inspector. In short, in light of Coxey's lack of knowledge, education, skill, training or experience in aircraft engine maintenance, we cannot say the district court's refusal to allow Coxey to testify as to the significance of the restart and the mechanical adjustments made to the engine was an abuse of discretion.
 
 
 18
 The plaintiff argues that because Coxey had been certified as an expert in other trials he was qualified as an expert in the trial below. Testifying as an expert does not automatically qualify the individual as an expert. Kline, 878 F.2d at 800 ("[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying.").
 
 B
 
 19
 Plaintiff argues that Abromavich was negligent in landing the airplane. Abromavich was confronted with an emergency situation. From the time the engine failed to the time the plane crash-landed, less than three minutes elapsed. In this perilously short time frame, it was incumbent upon Abromavich to attempt to restart the engine, find a suitable place to land the airplane and land the airplane safely. Without question, Abromavich was confronted with an emergency as a matter of law.
 
 
 20
 Under Maryland law, "[t]he mere fact that a person finds himself in a predicament or emergency does not automatically relieve him from his obligation to use ordinary care." Warnke v. Essex, 141 A.2d 728, 729 (Md. 1958). To determine whether liability extends to Abromavich, our inquiry must focus on whether he exercised due care under the circumstances he encountered. Armstrong v. Johnson Motor Lines, Inc., 280 A.2d 24, 29 (Md. 1971). The plaintiff argues that Abromavich did not exercise due care in landing the airplane because he landed the airplane with the landing gear down and the flaps up. Our review of the record leads us to one inescapable conclusion-the airplane experienced an extraordinarily safe landing under the circumstances faced by the pilot. Considering the adverse circumstances that Abromavich faced, it was nothing short of true flying expertise to land the airplane in such a safe manner. Because there is simply no proof that Abromavich created the situation as a result of his own negligence, see Baker v. Shettle, 72 A.2d 30 (Md. 1950) (emergency cannot exist if the situation was caused by the negligence of the defendant), Abromavich's actions were entirely and completely reasonable. The evidence, in a light most favorable to the plaintiff, would not support a finding of negligence. Accordingly, the district court's decision to grant defendant's motion for a directed verdict was not erroneous.
 
 IV
 
 21
 We find plaintiff's remaining assignments of error are without merit. Accordingly, the district court's grant of a directed verdict in favor of Abromavich is affirmed.
 
 AFFIRMED
 
 
 [1]
 A "hot start" procedure involves adjusting the mixture of fuel all the way to lean to account for the possibility of a flooded engine incurred in take off and climbing to a desired altitude
 
 
 [2]
 Plaintiff seeks reliance on the doctrine of res ipsa loquitur. Three criteria are necessary before the plaintiff can invoke the theory of res ipsa loquitur. They are "(1) [a] casualty of a sort which usually does not occur in the absence of negligence, (2)[c]aused by an instrumentality within the defendant's exclusive control, [and] (3)[u]nder the circumstances indicating that the casualty did not result from the act or omission of the plaintiff." Harrison v. Bill Cairns Pontiac, 549 A.2d 385, 389 (Md. 1988) (citations omitted)
 Under the second prong, the plaintiff must provide"sufficient evidence tending to eliminate other causes, such as the absence of negligence, negligence of third parties, or the plaintiff's own alteration or misuse." Id. (citations omitted). Plaintiff has simply provided insufficient evidence to eliminate other causes of the engine failure, such as: (1) an improper engine overhaul performed six weeks prior to the crash, (2) a fractured fuel line, or (3) a corroded magneto. Any of these causes would not be discovered by the recommended pre-flight inspection or corrected by the recommended postengine failure procedures. Accordingly, the doctrine, which has been used more and more sparingly by courts, is inapplicable to the case at bar.